**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
Eastern Division (Youngstown)**

SUSAN BEIERSDORFER,DARIO
HUNTER, GREG HOWARD, SALLY JO
WILEY, SARAQUOIA BRYANT,
KATHARINE S. JONES, GERALD
DOLCINI, GWEN FISCHER, DAMEN
RAE, WILLIAM LYONS, GREGORY
PACE, MARKIE MILLER, and BRYAN
TWITCHELL,

       Plaintiffs,

v.

FRANK LaROSE, in his official capacity as
Secretary of State of the State of Ohio; and
PAMELA B. MILLER, LARRY G. CRAY,
JOHN V. WELKER, JR., SHARON A.
RAY, in their official capacities as members
of the Medina County Board of Elections;
HELEN WALKER, KATE MCGUCKIN,
KEN RYAN, and AUNDREA
CARPENTER-COLVIN, in their official
capacity as members of the Athens County
Board of Elections; DAVID BETRAS,
MARK E. MUNROE, ROBERT WASKO,
and TRACEY S. WINBUSH, in their
official capacities as members of the
Mahoning County Board of Elections;
ELAYNE J. CROSS, DORIA DANIELS,
PATRICIA NELSON, DENISE L. SMITH,
in their official capacities as members of the
Portage County Board of Elections; DAVID
W. FOX, JAMES V. STEWART,
CHARLES E. WILLIAMS, and PAULA J.
WOOD, in their official capacities as
members of the Meigs County Board of
Elections; DOUGLAS J. PREISSE,
BRAD K. SINNOTT, KIMBERLY E.
MARINELLO, and MICHAEL E.
SEXTON, in their official capacities as

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. _____

-1-

members of the Franklin County Board of
Elections; RICHARD F. SCHOEN,
BRENDA HILL, JOSHUA HUGHES, and
DAVID KARMOL, in their official
capacities as members of the Lucas County
Board of Elections,

        Defendants.

\)

\)

\)

\)

\)

\*        \*        \*        \*        \*

## COMPLAINT FOR DECLARATORY JUDGMENT AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

1. Plaintiffs ask this Court to enjoin Ohio's ballot access scheme to the extent it allows unconstitutional pre-enactment review of proposed ballot measures by election officials and the judiciary in violation of separation of powers and the people's core political rights; to declare unconstitutional, and enjoin enforcement of, the portions of Ohio Rev. Code §§ 307.95, 307.95 ( C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3) that authorize local boards of elections and the Secretary of State to scrutinize the subject matter and content of ballot initiatives; and to award Plaintiffs costs and attorney's fees under 42 U.S.C. § 1988(b).

## OVERVIEW OF OHIO INITIATIVE PROCESS AND ITS UNCONSTITUTIONAL RESTRICTIONS ON BALLOT ACCESS

2. The Ohio Constitution, Article I, § 2, provides that the political power is inherent in the people and that the people have the right to alter, reform, or abolish the same, whenever they may deem it necessary.

3. The Ohio Constitution, Article X, § 3 and Article XVIII, § 7, guarantee county and city residents the right to propose ballot measures via the initiative process for county and municipal charters, respectively.

4. The Ohio State legislature has enacted legislation pertaining to the exercise of the right

to initiative. See generally O.R.C. §§ 307.94, 307.95, 731.28, 3501.11(K), 3501.38(M), 3501.39(A)(3). A number of Ohio state statutes pertaining to the exercise of the right to initiative allow election officials to scrutinize the subject matter and content of ballot initiatives. This review severely burdens or otherwise unreasonably interferes with Plaintiffs' First Amendment rights, and violates the separation of powers doctrine.

5. The Ohio state judiciary has similarly allowed election officials to interfere with the right to initiative by upholding election officials' substantive, content-based review of proposed initiatives pre-enactment.

6. Ohio's ballot access scheme has further enabled the Ohio state judiciary to interfere with the citizen lawmaking process: by deferring to election officials' substantive, content-based review; by interjecting itself into the citizen lawmaking process pre-enactment; and by issuing advisory opinions on the validity of proposed measures pre-enactment.

7. In 2017, the Ohio state legislature took additional unconstitutional steps to erode the initiative power by enacting HB 463 (a bill introduced as dealing with foreclosures, but containing significant changes to election laws). HB 463 contained changes to Ohio election statutes that purported to codify judicial decisions allowing unconstitutional pre-enactment content-based review of proposed initiatives. Election officials have relied on the statutes enacted in HB 463 to decide to not put duly-qualified initiatives on the ballot.

8. Plaintiffs' experience with the Ohio initiative process, both pre- and post-HB 463, demonstrates Ohio's unconstitutional and arbitrary restrictions on ballot access and interference with the citizen lawmaking process through pre-enactment content-based review.

9. The passage of HB 463 and election officials' continued violation of Plaintiffs'

constitutional rights by vetoing initiatives before they go onto the ballot shows that Defendants will continue to prevent select proposed initiatives from being placed on the ballot absent court intervention.

10. Defendants have been violating, and continue to violate, Plaintiffs' First Amendment rights and the right of local, community self-government by examining the content of proposed initiatives, and by, in most instances, opining that they are not fit for the ballot based on their content and on that basis keeping them off the ballot.

11. The lack of a bright line rule and clear prohibition against any pre-enactment review of a proposed initiative's content by election officials or the judiciary renders the initiative process in violation of core political rights and subject to unconstitutionally inconsistent results.

12. Ohio's ballot access scheme and Defendants' unconstitutional conduct violates the inherent and constitutionally secured right of local, community self-government, the First and Fourteenth Amendments of the United States Constitution, and runs afoul of Ohio's separation of powers doctrine.

**PARTIES**

**Plaintiffs**

13. All the plaintiffs are residents of Ohio who have suffered and will continue to suffer deprivation of their constitutional rights absent a Court order enjoining application of unconstitutional provisions of Ohio Rev. Code §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3), enjoining Defendants' unconstitutional conduct, and enjoining content-based pre-enactment review by election officials and the judiciary.

14. Plaintiff Susan Beiersdorfer is a resident at 359 Bradley Lane, Youngstown,

Mahoning County, OH 44504. Plaintiff Beiersdorfer has been since 2013, and continues to be, involved in proposed city charter amendment initiatives by such actions as collecting signatures, serving on petition committees, and participating in lawsuits to challenge the unlawful actions of state election officials.

15. Plaintiff Dario Hunter is a resident at 439 Pasadena Ave., Youngstown, Mahoning County, OH 44507. Plaintiff Hunter has been since 2016, and continues to be, actively involved in proposed city charter amendment initiatives by such actions as collecting signatures, participating in campaigns, and serving on petition committees.

16. Plaintiff Greg Howard is a resident at 41329 Gibson Ridge Road, Albany, Meigs County, OH 45710. Plaintiff Howard has been since 2015, and continues to be, involved in proposed county charter initiatives by such actions as collecting signatures, serving on petition committees, and participating in lawsuits to challenge the unlawful actions of state election officials. Plaintiff Howard is part of the 2018 Meigs County Home Rule Committee and is currently collecting signatures to get a county charter on the 2019 ballot.

17. Plaintiff Sally Jo Wiley is a resident at 3050 Glen Finnan Drive, Albany, Athens County, Ohio 45710. Plaintiff Wiley has been since 2015, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on petition committees, collecting signatures, and participating in lawsuits for the years 2015 through 2017 to challenge the unlawful actions of state election officials.

18. Plaintiff Saraquoia Bryant is a resident at 7002 SR 329, Guysville, Athens County, OH 45735. Plaintiff Bryant has been since 2015 and continues to be actively involved in the Athens Community Bill of Rights Committee ("ACBORC"), a coalition of activists concerned

about oil and gas hydraulic fracturing and the practice of using injection wells for disposal of its wastes. She collected petition signatures in 2015 through 2017. In 2017, she served on the petition committee and filed a legal challenge to the Athens BOE's decision not to place the proposed initiative on the ballot. Plaintiff Bryant has been, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on petition committees, collecting signatures, and participating in lawsuits to challenge the unlawful actions of state election officials.

19. Plaintiff Katharine S. Jones is a resident at 2606 Hidden Spring Ln, Wadsworth, Medina County, OH 44281. Plaintiff Jones is a member of Sustainable Medina County, an unincorporated community group of concerned residents that advocates for local, direct democratic control over energy policy and fossil fuel projects taking place within the county. Plaintiff Jones has been since 2014, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on petition committees, collecting signatures, and participating in lawsuits to challenge the unlawful actions of state election officials.

20. Plaintiff Gerald Dolcini is a resident at 308 Bellus Rd., Hinckley, Medina County, OH 44233, where he has an organic farm. Plaintiff Dolcini is a member of Sustainable Medina County. Plaintiff Dolcini has been since 2016, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on the petition committee, collecting signatures, and participating in lawsuits to challenge the unlawful actions of state election officials.

21. Plaintiff Gwen Fischer is a resident at 6793 Cheryl Drive, Hiram, Portage County, OH

44234. Plaintiff Fischer is a founding member of the Portage Community Rights Group, a group working to initiate and sponsor a vote on a proposal to convert the Portage County government to a charter form and is currently circulating petitions for the 2019 ballot. Plaintiff Fischer has been since 2014, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on the petition committee, collecting signatures, and participating in lawsuits to challenge the unlawful actions of state election officials.

22. Plaintiff Damen Rae is a resident at 4727 Hattrick Road, Ravenna, Portage County, OH 44266. Plaintiff Rae is a member of the Portage Community Rights Group. Plaintiff Rae has been since 2016, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on the petition committee and collecting signatures. Plaintiff Rae is actively collecting signatures to place a charter on the 2019 ballot.

23. Plaintiff William Lyons is a resident at 245 Walhalla Rd., Columbus, Franklin County, OH 43202, and is a member of the Columbus Community Bill of Rights community group. Plaintiff Lyons has been since 2015, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on the petition committee, collecting signatures, and participating in lawsuits to challenge the unlawful actions of state election officials.

24. Plaintiff Gregory Thomas Pace is a resident at 1362 Erickson Road, Columbus, Franklin County, OH 43227. Plaintiff Pace is a founding member of the Columbus Community Bill of Rights group. Plaintiff Pace has been since 2014, and continues to be, actively involved in efforts to place proposed initiatives on the ballot by such actions as serving on the petition committee, collecting signatures, and participating in lawsuits to challenge the unlawful actions

of state election officials.

25. Plaintiff Markie Miller is a resident at 5905 317th Street, Toledo, Lucas County, OH 43611. Plaintiff Miller is a participant in Toledoans for Safe Water. Plaintiff Miller co-organized the campaign for the Lake Erie Bill of Rights. Plaintiff Miller has been since 2016, and continues to be, actively involved in efforts to place proposed Lake Erie Bill of Rights on the ballot by collecting signatures.

26. Plaintiff Bryan Twitchell is a resident at 2509 Aldringham Road, Toledo, Lucas County, Ohio 43606. Plaintiff Twitchell is one of the original participants in Toledoans for Safe Water. Plaintiff Twitchell has been since 2016, and continues to be, actively involved in efforts to place proposed Lake Erie Bill of Rights on the ballot by serving on the petition committee, collecting signatures, and participating in lawsuits to challenge the unlawful actions of state election officials.

27. Defendants have violated, and continue to violate, Plaintiffs' constitutional rights by applying Ohio's unconstitutional election laws and by engaging in unlawful pre-enactment review of proposed ballot measures.

### **Defendants**

28. Defendant Frank LaRose is sued in his official capacity as Ohio Secretary of State (hereinafter "Secretary LaRose"). Secretary LaRose maintains his office at 180 East Broad Street, 16th Floor, Columbus, Ohio 43215 and functions as Ohio's chief elections officer. O.R.C. § 3501.04. Secretary LaRose's responsibilities include, among others, appointing members of the Boards of Elections, issuing directives and advisories to Board members regarding election administration and enforcing them, prescribing the form of registration cards, ballots, cards of

instructions, and poll books, and reviewing petitions to place measures on the ballot. O.R.C. §§ 307.95( C), 3501.05.

29. Defendant LaRose's predecessor as Ohio Secretary of State, Jon Husted, violated the people's constitutional rights by compelling local election officials to comply with Ohio's unconstitutional election laws and by himself engaging in unconstitutional pre-election review of proposed ballot measures. Defendant LaRose is likely to implement and/or enforce the same policies and practices, and should be enjoined from so doing.

30. Defendants Pamela B. Miller, Larry G. Cray, John V. Welker, Jr., and Sharon A. Ray are the appointed Medina County Board of Elections members, with a mailing address of  P.O. Box 506, Medina, OH 44258. They are responsible for applying Ohio's unconstitutional election laws and participating in Ohio's unconstitutional ballot access scheme, and are being sued in their official capacities ("Medina BOE").

31. Defendants Helen Walker, Kate McGuckin, Ken Ryan, and Aundrea Carpenter-Colvin are appointed members of the Athens County Board of Elections, located at 15 S Court St, #130, Athens, OH 45701. They are responsible for applying Ohio's unconstitutional election laws and participating in Ohio's unconstitutional ballot access scheme, and are being sued in their official capacities ("Athens BOE").

32. Defendants David Betras, Mark E. Munroe, Robert Wasko, and Tracey S. Winbush are appointed members of the Mahoning County Board of Elections, located at 345 Oak Hill Avenue, Entrance A, Youngstown, OH 44502.  They are responsible for applying Ohio's unconstitutional election laws and participating in Ohio's unconstitutional ballot access scheme, and are being sued in their official capacities ("Mahoning BOE").

33. Defendants Elayne J. Cross, Doria Daniels, Patricia Nelson, Denise L. Smith are appointed members of the Portage County Board of Elections, located at 449 S. Meridian St., #101, Ravenna, OH 44266. They are responsible for applying Ohio's unconstitutional election laws and participating in Ohio's unconstitutional ballot access scheme, and are being sued in their official capacities ("Portage BOE").

34. Defendants David W. Fox, James V. Stewart, Charles E. Williams, and Paula J. Wood are appointed members of the Meigs County Board of Elections, located at Meigs County Annex Building, 113 E. Memorial Dr., Suite A, Pomeroy, OH 45769. Said Defendants are responsible for applying Ohio's unconstitutional election laws and participating in Ohio's unconstitutional ballot access scheme, and are being sued in their official capacities ("Meigs BOE").

35. Defendants Douglas J. Preisse, Brad K. Sinnott, Kimberly E. Marinello, and Michael E. Sexton are appointed members of the Franklin County Board of Elections, located at 1700 Morse Road, Columbus, OH 43229. They are responsible for applying Ohio's unconstitutional election laws and participating in Ohio's unconstitutional ballot access scheme, and are being sued in their official capacities ("Franklin BOE").

36. Defendants Brenda Hill, Joshua Hughes, Richard F. Schoen and David Karmol are appointed members of the Lucas County Board of Elections, located at One Government Center, Suite 300, Toledo, OH 43604. They are responsible for applying Ohio's unconstitutional election laws and participating in Ohio's unconstitutional ballot access scheme, and are being sued in their official capacities ("Lucas BOE").

37. Defendants have violated, and continue to violate, the people's state and federal

constitutional rights by engaging in unconstitutional pre-enactment review of proposed ballot measures.

## JURISDICTION AND VENUE

38. Plaintiffs seek declaratory and injunctive relief pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

39. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' causes of action brought pursuant to the First, Ninth, and Fourteenth Amendments of the United States Constitution.

40. This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367.

41. Venue is proper under 28 U.S.C. § 1391(b) because at least one Defendant resides in the instant district as defined by 28 U.S.C. § 1391(c); and a substantial part of the events or omissions giving rise to the claim occurred in the instant district.

42. Plaintiffs have standing to bring this action because they have been, and are currently being, harmed by Ohio's election laws and the manner in which Ohio's ballot access scheme violates their constitutional rights.

## LEGAL FRAMEWORK

43. The Ohio State Constitution and Ohio election statutes set forth the framework under which Ohio residents may place proposed measures on the ballot, and this framework cannot violate fundamental and constitutionally secured rights.

### A. Ohio election laws allowing Defendants Ohio Boards of Elections and Secretary of State to engage in unconstitutional content based, pre-enactment review of

**proposed ballot measures**

44. For several years, Ohio election statutes have unconstitutionally restricted Plaintiffs' rights to place proposed measures on the ballot by allowing Defendants to engage in content-based, pre-enactment review of proposed ballot measures.

45. Legislation known as House Bill 463 ("HB 463"), which became law on April 6, 2017, amended Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3). In doing so, HB 463 further eroded the right to ballot access by expressly and unconstitutionally permitting Defendants to review the substance of proposed initiatives to determine such issues as whether the proposed initiative is within a county's or municipality's "authority to act" or "initiative power" or is "valid", and whether the content and substance of the petition conforms with the requirements of the Ohio Constitution.

46. The provisions of O.R.C. §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3) set forth herein, as authoritatively construed by the Ohio Supreme Court, facially violate the First Amendment.

47. Further, throughout the past several years, Plaintiffs have been subject to unconstitutional application of Ohio's election laws by their respective Defendant election officials.

### 1. Ohio Rev. Code § 307.94– "County charter; petition; alternative methods; verifying signatures"; and § 307.95 - "Determining validity of petition; protest; secretary of state determines"

48. Ohio Rev. Code §§ 307.94 and 307.95 set forth the process under which petitioners' committees may present petitions for county charters to the board of elections for placement on the ballot.

-12-

49. Section 307.94 describes the process for petitioners to submit signatures to the board of elections. If the board of elections determines that the petition and the signatures on the petition meet the requirements of law, the board of elections submits a report to the county commissions.

50. With regard to this first part of the process, Section 307.94 provides, in part:

Such electors may, in the alternative not later than the one hundred thirtieth day before the date of a general election, file such a petition with the board of elections of the county. ***In such case the board of elections shall immediately proceed to determine whether the petition and the signatures on the petition meet the requirements of law and to count the number of valid signatures and to note opposite each invalid signature the reason for the invalidity.*** The board of elections shall complete its examination of the petition and the signatures and shall submit a report to the board of county commissioners not later than the one hundred twentieth day before the date of the general election certifying whether the petition is valid or invalid and, if invalid, the reasons for invalidity, whether there are sufficient valid signatures, and the number of valid and invalid signatures. The petition and a copy of the report to the board of county commissioners shall be available for public inspection at the board of elections.

51. The next portion of Section 307.94 provides two alternatives: one if the board of elections certifies the petition to be valid and have a sufficient number of signatures, and one if the board of elections certifies the petition to be invalid or to have an insufficient number of signatures:

If the petition is certified by the board of elections to be valid and to have sufficient valid signatures, the board of county commissioners shall forthwith and not later than four p.m. on the one hundred eleventh day before the general election, by resolution, certify the petition to the board of elections for submission to the electors of the county at the next general election. If the petition is certified by the board of elections to be invalid or to have insufficient valid signatures, or both, the petitioners' committee may protest such findings or solicit additional signatures as provided in section 307.95 of the Revised Code, or both, or request that the board of elections proceed to establish the validity or invalidity of the petition and the sufficiency or insufficiency of the signatures in an action before the court of common pleas in the county.

O.R.C. § 307.94.

52. If the board of elections has certified the petition to be valid and have a sufficient number of signatures, and the board of county commissioners certifies it to the board of elections for submission to the electors, the board of elections proceeds to again review the petition, this time under § 307.95(A).

53. Section 307.95(A) incorporates review as provided by Section 3501.38, including the provisions of that section that constitute unconstitutional substantive review:

> (A) When a county charter petition has been certified to the board of elections pursuant to section 307.94 of the Revised Code, the board shall immediately *proceed to determine whether the petition and the signatures on the petition meet the requirements of law, including section 3501.38 of the Revised Code*, and to count the number of valid signatures. The board shall note opposite each invalid signature the reason for the invalidity.

54. If, under § 307.94, the board of elections certifies the petition to be invalid or to have insufficient valid signatures, or both, the petitioners' committee may protest such findings or solicit additional signatures as provided in § 307.95 of the Revised Code, or both, or request that the board of elections proceed to establish the validity or invalidity of the petition and the sufficiency or insufficiency of the signatures in an action before the court of common pleas in the county.

55. If the petitioners' committee chooses to protest, it must follow the procedures set forth in § 307.95(B) and (C). If a petitioners' committee protests the boards of election's decision it ends up before the Defendant Secretary of State for review.

56. Section 307.95(C) impermissibly requires the Secretary of State to review the constitutionality of a petition and determine whether it is "within the initiative power":

> The secretary of state, within ten days after receipt of the protests, shall determine the sufficiency or insufficiency of the signatures and the *validity or invalidity of the petition,*

***including whether the petition conforms to the requirements set forth in Section 3 of Article X and Section 3 of Article XVIII of the Ohio Constitution, including the exercise of only those powers that have vested in, and the performance of all duties imposed upon counties and county offices by law, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot. The petition shall be invalid if any portion of the petition is not within the initiative power***. The secretary of state may determine whether to permit matters not raised by protest to be considered in determining such validity or invalidity or sufficiency or insufficiency, and may conduct hearings, either in Columbus or in the county where the county charter petition is filed. The determination by the secretary of state is final.

O.R.C. § 307.95( C).

57. Petitions filed under O.R.C. §§ 307.94 or 307.95 are also subject to review under § 3501.38(M)(1).

58. As further alleged below, § 3501.38(M)(1) allows the board of elections to undertake unlawful content-based review.

### 2. Board of election's powers and duties under Ohio Rev. Code §§ 3501.11, 3501.38 and 3501.39

### a. O.R.C. 3501.11 –"Duties of board"

59. O.R.C. § 3501.11 sets forth the boards of election's powers and duties.

60. The amendments to O.R.C.§ 3501.11(K), as a result of HB 463, permit unlawful substantive review as to the "sufficiency and validity of petitions", and as to whether the measure is within the "scope of authority" and "initiative power".

Section 3501.11(K) provides, in part:

Each board of elections shall exercise by a majority vote all powers granted to the board by Title XXXV of the Revised Code, shall perform all the duties imposed by law, and shall do all of the following:

\*       \*       \*

(K)(1) Review, examine, and certify ***the sufficiency and validity of petitions*** and nomination papers, and, after certification, return to the secretary of state all petitions and

-15-

nomination papers that the secretary of state forwarded to the board;

*(2) **Examine each initiative petition, or a petition filed under section 307.94 or 307.95 of the Revised Code, received by the board to determine whether the petition falls within the scope of authority to enact via initiative and whether the petition satisfies the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code. The petition shall be invalid if any portion of the petition is not within the initiative power.***

### b. O.R.C. § 3501.38 – "Declaration of candidacy, nominating petition, other petition requirements; election falsification"

61. Section 3501.38, referenced in O.R.C. § 3501.11(K), applies to "[a]ll declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue".

62. Section 3501.38(M)(1) expressly subjects petitions to content-based, substantive review. Section 3501.38(M)(1)(a) requires the board of elections to consider whether the petition's substance is within the scope of the municipal political subdivision's authority to enact via initiative. Section 3501.38(M)(1)(b) requires the board of elections to consider whether the petition's substance is within the scope of the county's authority to enact via initiative:

(M)(1) Upon receiving an initiative petition, or a petition filed under section 307.94 or 307.95 of the Revised Code, concerning a ballot issue that is to be submitted to the electors of a county or municipal political subdivision, the board of elections shall examine the petition to determine:

(a) Whether the petition falls within the scope of a municipal political subdivision's authority to enact via initiative, including, if applicable, the limitations placed by Sections 3 and 7 of Article XVIII of the Ohio Constitution on the authority of municipal corporations to adopt local police, sanitary, and other similar regulations as are not in conflict with general laws, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot. The petition shall be invalid if any portion of the petition is not within the initiative power; or

-16-

(b) Whether the petition falls within the scope of a county's authority to enact via initiative, including whether the petition conforms to the requirements set forth in Section 3 of Article X of the Ohio Constitution, including the exercise of only those powers that have vested in, and the performance of all duties imposed upon counties and county officers by law, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot. The finding of the board shall be subject to challenge by a protest filed pursuant to division (B) of section 307.95 of the Revised Code.

O.R.C. § 3501.38(M)(1).

63. Section 3501.38 also contains technical requirements governing form and processing of initiative petitions. Examples of such technical requirements include the fact that each signer must be a registered elector, signatures shall be affixed in ink, and the circulator must sign a statement under penalty of election falsification.

64. It is not unconstitutional for the board of elections to examine petitions for compliance with technical requirements because such review does not require consideration of a measure's substance or content.

### c. O.R.C. § 3501.39 – "Unacceptable petitions"

65. Section 3501.39(A)(3) re-enforces the unconstitutionally broad scope of the board of elections' review authority.

66. That section requires a board of elections to accept any petition described in section 3501.38 of the Revised Code unless:

the petition falls outside the scope of authority to enact via initiative or does not satisfy the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code. The petition shall be invalid if any portion of the petition is not within the initiative power.

O.R.C. § 3501.39 (A)(3).

67. The last sentence of § 3501.39(A)(3) unlawfully permits the board of elections to

throw out the entire petition if it claims any single portion of it is not within the initiative power, and serves to further illustrate the problematic pre-enactment review woven throughout Ohio election law. Indeed, even the judiciary cannot take such draconian actions in reviewing measures post-enactment, but rather must look to preserve as much of a measure as possible.

**B. Ohio state judiciary's role in Ohio's unconstitutional ballot access scheme**

68. The Ohio state judiciary, in interpreting and applying Ohio's statutory ballot access scheme, is complicit in Defendant election officials' unconstitutional pre-enactment review under Ohio election laws.

69. For the past several years, the Ohio state judiciary has been reviewing, and with few exceptions rubber-stamping, Defendant election officials' unconstitutional substantive, content-based review. In most cases, it has been doing so in the context of pre-election mandamus proceedings, in which the scope of review asks not whether the election officials erred in finding a proposed initiative to be unlawful, but only whether they abused their discretion in so finding. This means elections officials are able to keep lawful measures off the ballot merely by having an objection to them that is not completely arbitrary and capricious.

70. For reasons similar to why election officials should not interfere with proposed measures pre-enactment, the judiciary must also refrain from interfering with the people's lawmaking process, pre-enactment. The judiciary must reserve any such review until after the proposed measure has been voted upon and enacted into law.

71. The judiciary cannot review the substance or content of legislation proposed by legislative bodies, pre-enactment. Nor can the judiciary review whether a bill, pre-enactment, is 'within the scope of the legislature's authority to enact.' Likewise, the judiciary cannot review

proposed initiatives pre-enactment. To do so violates Plaintiffs' constitutional rights and the doctrine of separation of powers, and amounts to an impermissible advisory opinion as to the validity of a law yet to be enacted.

### C. Ohio's ballot access scheme unconstitutionally burdens the people's lawmaking by allowing content-based review of proposed measures pre-enactment

72. A state initiative process provides a uniquely provocative and effective method of spurring and hosting public debate on an issue of importance to the proponents of the proposed initiative. *See City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 196 (2003) ("In assessing the referendum as a 'basic instrument of democratic government,' we have observed that '[p]rovisions for referendums demonstrate devotion to democracy, not to bias, discrimination, or prejudice.' And our well-established First Amendment admonition that 'government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable,' dovetails with the notion that all citizens, regardless of the content of their ideas, have the right to petition their government.").

73. The Supreme Court has made clear that the process involved in proposing legislation by means of initiative involves core political speech. *See Meyer v. Grant*, 486 U.S. 414, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988) (overturning state's prohibition on using paid petition circulators); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (overturning various registration requirements for petition circulators). In the area of citizen initiative lawmaking "the importance of First Amendment protections is at its zenith" and the state's burden to justify restrictions on that process is "well-nigh insurmountable." *Id.* at 424-25.

74. The mere fact that plaintiffs "remain free to employ other means to disseminate their

ideas does not take their [preferred means of] speech through [the initiative process] outside the bounds of First Amendment protection." *Meyer*, 486 U.S. at 424.

75. While the right to pass legislation through initiative or referendum is a state-created right not guaranteed by the U.S. Constitution, if a state chooses to confer the right of initiative and referendum to its citizens, it is "obligated to do so in a manner consistent with the Constitution." *Meyer*, 486 U.S. at 420, 108 S.Ct. 1886; *Taxpayers United for Assessment Cuts*, 994 F.2d 291, 295 (1993) ("[W]e conclude that although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution.").

76. Pre-enactment substantive review prevents plaintiffs from engaging in First Amendment protected activity.

77. Pre-enactment substantive review imposes severe restrictions on ballot access because it involves direct regulation of, and interference with, the petition process itself by injecting substantive review, by the election officials or the judiciary or both, into the middle of the process – after signature gathering and before the election --- as a means of keeping proposed measures off the ballot.

78. Pre-enactment substantive review unlawfully interferes with core political speech in a manner equal to or greater than regulations that inhibit the circulation of initiative petitions. *See Meyer,* 486 U.S. at 421-22 ("the circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as 'core political speech.'").

79. Pre-enactment substantive review "limits the number of voices" conveying the

message about a proposed measure and "the size of the audience" reached because it prevents measures from being placed on the ballot. *See Meyer*, 486 U.S. at 422–23.

80. Pre-enactment substantive review makes it extremely difficult, and often impossible, to place proposed measures that are politically controversial on the ballot, thereby eliminating all campaigning regarding the measure from the time of Defendants' unlawful interference in the process up to election day. *See Meyer*, 486 U.S. at 422–23; *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 197 (1999) (finding restrictions on the ballot initiative process unconstitutional where they "cut[ ] down the number of message carriers in the ballot-access arena without impelling cause.")

81. Pre-enactment substantive review makes it extremely difficult, and often impossible, to place proposed measures that are politically controversial on the ballot, thereby depriving voters of the opportunity to vote on such measures.

82. Ohio has deviated far from the guiding principles imposed by the Supreme Court in *Williams v. Rhodes*, 393 U.S. 23, 30–31, 89 S.Ct. 5, 10, 21 L.Ed.2d 24 (1968) – a case reviewing Ohio's electoral scheme. The *Williams* Court explained "the interwoven strands of 'liberty' affected by ballot access restrictions":

> In the present situation the state laws place burdens on two different, although overlapping, kinds of rights—the right of individuals to associate for the advancement of political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms.

*See Williams v. Rhodes, supra*, 393 U.S., at 31, 89 S.Ct., at 10 ("the right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes"); *id.*, at 41, 89 S.Ct., at 15 (Harlan, J., concurring in

the result) ("by denying the appellants any opportunity to participate in the procedure by which the President is selected, the State has eliminated the basic incentive that all political parties have for conducting such activities, thereby depriving appellants of much of the substance, if not the form, of their protected rights"); *Illinois State Board of Elections v. Socialist Workers Party*, 440 U.S. 173, 186 (1979) ("an election campaign is a means of disseminating ideas as well as attaining political office.... Overbroad restrictions on ballot access jeopardize this form of political expression.").

82. Content-based review that prevents measures from being placed on the ballot implicates voters' fundamental political right to vote. *See NAACP v. Alabama*, 357 U.S. 449, 460, 78 S.Ct. 1163, 1170, 2 L.Ed.2d 1488 (1958) (Justice Harlan stated that it "is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech.").

83. Ballot initiative petitioners and all voters are deprived of their rights to political speech when they cannot campaign for a particular measure or vote for it because either the legislature, executive or the judiciary has kept the measure off of the ballot.

84. Plaintiffs' experience with Ohio's ballot access scheme illustrates the effect it has on reducing speech by severely and arbitrarily restricting ballot access. If allowed to continue, this chilling effect will continue to destroy the constitutional initiative process entirely.

85. By looking into the substance of proposed measures, Defendants perpetuate a ballot access scheme that unconstitutionally regulates the exchange of ideas about political changes sought through the initiative and referendum process.

-22-

86. Defendants cannot justify the severe burden imposed on political expression by Ohio's ballot access scheme. Ohio has neither a compelling nor an important interest in executive or judicial oversight of the content of the proposed measure prior to an election.

87. Questions regarding the validity of a proposed measure, once enacted, may be addressed, just as with legislation passed by the legislature, post-enactment.

88. Substantive, content-based review pre-enactment violates the First Amendment.

**A. Ohio's ballot access scheme violates the people's right of local, community self-government**

88. The right of local, community self-government is an inherent, fundamental, and constitutionally based political right of people. It is a right held individually, and exercised collectively, by all eligible electors of a local government. As the right is fundamental, government may not infringe it without satisfying strict scrutiny.

89. The American Declaration of Independence secures the right of local, community self-government by recognizing four principles of law essential to American governments: first, that people possess certain fundamental civil and political rights; second, that governments are created to secure those rights; third, that governments owe their existence to, and derive their power exclusively from, the community of people which creates and empowers them; and fourth, that if government becomes destructive of those ends, the people have both a right and a duty to alter or abolish that system of government, and replace it with a system of government that recognizes self-governing authority and that protects the people's civil and political rights.

90. The right of local, community self-government includes three component rights: (1) The right to a system of government within the local community that is controlled by a majority

of its citizens; (2) The right to a system of government within the local community that secures and protects the political and civil rights of every person in the community; and (3) The right to abolish any system of local government that infringes these component rights, and to reconstitute local government in a form that secures and enforces them instead. These rights are embedded in the founding theory and documents of American government.

91. The right of local, community self-government, including its component rights, is inherent and unalienable. It derives necessarily from the fundamental principle that all political power is inherent in the people, and is exercised by them, for their benefit, and subject to their control.

92. The United States Constitution secures the right of local, community self-government, by incorporating the principles of the American Declaration of Independence in the Preamble and its structure, by securing the right of local, community self-government through the Ninth Amendment, and by preventing states from violating the right via the substantive due process protection in the Due Process Clause of the Fourteenth Amendment.

93. The Ohio Constitution also recognizes the right of local, community self-government. In the leading Ohio precedent, *Federal Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 118 N.E. 103 (1917), the Ohio Supreme Court, led by Justice Wanamaker, explained:

> The historical fact is that we had a hundred and more municipalities in Ohio already in existence at the time of the adoption of our first constitution, in 1802 . . . . All were then exercising local self-government. The constitutional fathers did not even mention municipalities or cities in the first constitution, and in the second constitution [of 1851] granted to the general assembly certain power to restrict, from all of which it would seem a mere legal and constitutional axiom that they never granted, nor intended to grant, to the general assembly of Ohio the general guardianship of all municipalities.
> If all political power is inherent in the people, as written in our constitution, for the government of the state, it would seem at least of equal importance that all political power should be inherent in the people for the government of our cities and villages and

-24-

so it seemed to men like Thurman, Ranney, Cooley and Campbell, than whom there have been few greater in American jurisprudence. I prefer to follow their course of reasoning, based upon historical fact and political principles, rather than the mere dictums and dogmas of decisions holding that municipal government is government by the general assembly.

*Id.* at 534-35. *Federal Gas* established local, community self-government in Ohio as a core political right of people to govern their local communities.

94. Ohio's ballot access scheme violates the right of local, community self-government, as expressed through the exercise of direct democracy, by placing unlawful blockades, insurmountable hurdles, and arbitrary and irrational procedures between the people of Ohio and their exercise and enjoyment of direct democracy.

## GENERAL BACKGROUND

95. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3) unlawfully permit Defendants to conduct substantive review of proposed measures, pre-enactment.

96. Defendants have otherwise been engaging, and continue to engage, in unlawful content- based, substantive review under the guise that Defendants may consider whether a proposed measure is within a county's or municipality's "scope of authority" or whether it is legislative or administrative in nature.

97. Defendants Secretary LaRose and former Secretary of State Husted before him, and the Defendants boards of elections have kept, and continue to keep, proposed measures off the ballot by reviewing the content and substance of proposed measures before they are placed on the ballot.

98. Ohio's statutory ballot access scheme enables the Ohio state judiciary to be complicit

in this unconstitutional content-based pre-enactment review.

99. The only constitutionally permissible role for Defendants is minimal. Defendants may consider whether the petition to place a proposed measure on the ballot is timely filed, whether the form of the petition is proper, and whether the petition contains a sufficient number of signatures. See O.R.C. § 3501.38 (requiring petitions to be signed by electors qualified to vote on the issue. Signatures must be made in ink; each signer must place on the petition the signer's name, date of signing, and location of voting residence. The petitions must have, on each paper, the circulators' indication of number of signatures and the circulators' statement that they witnessed the signatures of qualified signers. And the Petition must be submitted with all part petitions at one time); *see also* O.R.C. § 731.28.

100. Defendants may not consider the content or substance of proposed measures. Yet, Defendants have done so, and will continue to do so, absent a Court order declaring such statutes, regulations, policies, and practices unlawful and unconstitutional.

101. The dangers of pre-enactment review of the content and substance of proposed ballot measure are numerous and apparent.

102. Content-based, substantive pre-election review means that petitioners are prevented from engaging in pre-enactment informational campaigns and that voters are prevented from having the right to vote on proposed measures.

103. Content-based, substantive pre-enactment review violates separation of powers in two ways. It allows the Defendants to usurp the role of the judiciary, which is to review the substance and content of proposed measures after such proposed measures have been enacted (post-election). It also interferes with the people's right to exercise the legislative function of

proposing and adopting laws.

104. The result of Ohio's unlawful ballot access scheme is clear: Plaintiffs are faced with unconstitutional hurdles and arbitrarily inconsistent results in attempting to have proposed measures placed on the ballot.

105. The arbitrary results stemming from the unconstitutional and inconsistent scope of pre-enactment review engaged in by Ohio election officials and the judiciary as part of Ohio's ballot access scheme is well-documented and undisputable.

106. For instance, the County Commissioners Association of Ohio recognizes that the discretion currently afforded Defendants to conduct pre-enactment review leads to arbitrary and inconsistent results. The Commissioners' Handbook chapter on county government structures notes that: "Care should be taken in using this Chapter for definitive guidance because the case law and interpretations of these provisions are limited ***and often contradictory***." County Commissioners Association of Ohio, Ohio County Commissioners' Handbook, Ch. 2, p. 3 (emphasis added). In the specific background to follow, plaintiffs illustrate the arbitrary results at issue in this case.

107. Absent a bright line rule prohibiting the substantive, content-based pre-enactment review currently permitted by Ohio's ballot access scheme, violations of the people's constitutional rights will continue.

## SPECIFIC BACKGROUND

**Frackfree Mahoning Valley**

108. In 2011, citizens formed the grassroots organization that became Frackfree Mahoning Valley. Frackfree Mahoning Valley is a group of residents who came together out of

concern for their community and environment. Its mission is to protect the Health and Safety of the Citizens of Youngstown Ohio by amending the home rule city charter with a Citizens' Bill of Rights to protect drinking water, homes and air quality in order to put permanent protections in for Public Health and Safety so citizens can protect their drinking water, their air and their land. Plaintiffs Beiersdorfer and Hunter have been, and are part of, Frackfree Mahoning Valley.

109. Plaintiffs Beiersdorfer and Hunter, and other residents who are part of Frackfree Mahoning Valley, have attempted to exercise the right to initiative by preparing and collecting signatures for proposed amendments to the Youngstown Municipal Charter. The proposed charter amendments have addressed such issues as community rights, a ban on horizontal hydraulic fracturing (fracking) for oil and gas, the right to clean water, and the right to free and fair elections.

110. In attempting to place proposed charter amendments on the ballot, Plaintiffs Beiersdorfer and Hunter, and other proponents of these initiatives, have faced repeated unconstitutional review by election officials and arbitrary and inconsistent results by both election officials and the Ohio courts.

111. As a result of unconstitutional pre-election review, members of Frackfree Mahoning Valley have been forced to file lawsuits in state court challenging election officials' actions several times since 2013. Plaintiffs Beiersdorfer and Hunter have each been involved in these lawsuits.

112. In 2017, Plaintiffs Beiersdorfer and Hunter, along with other members of the petition committee, were again forced to file lawsuits challenging Defendant Mahoning BOE's unlawful pre-election review of the Youngstown Drinking Water Protection Bill of Rights and the

People's Bill of Rights for Fair Elections and Access to Local Government.

113. Defendant Mahoning BOE unlawfully reviewed the substance of the proposed charter amendments and concluded that they exceeded Youngstown's legislative power by creating new cause of actions, which was only one portion of the proposed charter amendment. The new causes of action would have allowed citizens to enforce their rights "through nonviolent direct action or by filing suit as a private attorney general."

114. In refusing to place the proposed initiatives on the ballot, the Mahoning BOE relied on the election law amendments made by House Bill 463.

115. Plaintiffs Beiersdorfer and Hunter participated in the ensuing mandamus action in state court challenging the Mahoning BOE's unlawful pre-election review of the Youngstown Drinking Water Protection Bill of Rights and the Drinking Water Protection Bill of Rights, and the BOE's decision to keep these proposed measures off of the ballot.

116. *In State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 95 N.E.3d 329, 2017-Ohio-8109 (2017), a 4-3 ruling, the petition committee lost at the Ohio Supreme Court, because the court deferred to Defendant Mahoning BOE's substantive review of the proposed charter amendments and upheld its decisions under an abuse of discretion standard of review.

117. In contrast, the Ohio Supreme Court reached the opposite result for a substantially similar ballot initiative advanced that same year in the City of Bowling Green. In that case, the Wood County BOE voted to place a bill of rights with similar language on the ballot, unlike the Mahoning BOE which voted to keep the measure off the ballot. Another party challenged the board of election's determination, but the Ohio Supreme Court upheld it, largely because it afforded deference to the board of election's decision.

118. As a result, the people in Bowling Green enjoyed a greater right to initiative than the people in Youngstown.

119. By creating a bright line rule which eliminates all substantive, content-based review, the right to initiative is consistently safeguarded for all Ohioans.

120. In the few instances in which Plaintiffs as proponents of proposed charter amendments have succeeded in getting a court order requiring placement of the proposed initiative on the ballot, their right to initiative has still been compromised.

121. The broad discretion afforded by unlawful content-based review results in arbitrary and inconsistent criteria applied by the Mahoning BOE in reviewing proposed charter amendments. Initiative proponents are subjected to an inadequate and unfair process, as part of which, even after spending hundreds of hours gathering signatures, whether a measure will be placed on the ballot is, at best, unpredictable.

122. Pre-enactment litigation results in unlawful content-based review of proposed charter amendments and imposes prior restraint on initiative proponents' free speech rights. Even in the rare circumstances where initiative proponents ultimately prevail in mandamus actions, the expense and delay as a result of pre-enactment litigation interferes with direct democracy, political speech, and ballot access.

123. On April 24, 2018, for instance, while the petition committee ultimately prevailed in its mandamus action, the Ohio Supreme Court did not order placement of the charter amendment onto the ballot until just two weeks before the *election. See State ex rel. Khumprakob v. Mahoning County Board of Elections*, 2018-Ohio-1602, 2018-0404.  By that time, election officials had already printed thousands of ballots without the proposed charter amendment on

them. Nor did initiative proponents have sufficient time to campaign against heavily funded opposition interests. The measure lost by a narrow margin, 3,649 to 2,928.

124. The April 2018 scenario illustrates the detrimental impact that occurs when substantive pre-enactment review by election officials necessitates court action.  The resulting delay and expense effectively deprives Plaintiffs of their right to meaningful ballot access.

125. The same problematic delay also occurs with any type of content-based review by the judiciary.

126. Later in 2018, Plaintiff Beiersdorfer again served on the petition committee for the proposed Drinking Water Protection Bill of Rights. Plaintiffs Beiersdorfer and Hunter both again collected signatures for this proposed charter amendment that contained the exact same language as the April 2018 measure. Plaintiffs spent a significant amount of time and resources.

127. The BOE waited until nearly the last possible day to certify it for placement on the ballot. The group was successful in placing the proposed charter amendment on the November 2018 ballot only because of the court case they had fought and won earlier that year.

128. Plaintiffs realize that any future initiatives are highly unlikely to be placed on the ballot, particularly without expending significant resources to defend them. At best, it is highly uncertain whether a future initiative will or will not be placed on the ballot because there are no consistent rules or processes.

129. Defendants' inconsistent and arbitrary content-based review of the proposed charter amendment is unconstitutional.

130. Absent a court order protecting Plaintiffs' constitutional rights, Defendants, and Ohio's ballot access scheme enabling pre-enactment review, will continue to unlawfully interfere

with Plaintiffs' constitutional rights.

**Columbus Community Rights Group**

131. Columbus Community Rights Group is a group of residents who came together out of concern for their community and environment. Its mission is to ensure Pure Water, Clean Air, Safe Soil and Local Control over Fracking and Frack Waste. Plaintiff Pace is a founding member of the Columbus Community Rights Group, and Plaintiff Lyons joined the effort in 2015.

132. In Columbus, on June 26, 2018, a Petition Committee, which included Plaintiffs Lyons and Pace, submitted 617 part-petition forms containing 18,404 signatures to the Columbus City Clerk in support of placement of a Proposed Ordinance on the ballot, titled "Community Bill of Rights for Water, Soil and Air Protection and to Prohibit Gas and Oil Extraction and Related Activities and Projects" ("Columbus BOR").

133. The proposed Columbus BOR ordinance contained a comprehensive community bill of rights that, among other things, declares that Columbus citizens possess rights to local, community self-government, potable water, clean air, safe soil, peaceful enjoyment of home, freedom from toxic trespass, and a sustainable energy future, and endows natural communities, including wetlands, streams, and rivers, with the rights to exist and flourish within the City of Columbus.

134. On July 9, 2018, the Franklin County Board of Elections notified the Columbus City Council that it had determined at least a total of 12,134 signatures to be valid signatures of registered voters, which exceeded the signature threshold required to qualify the initiative to the ballot.

135. On July 30, 2018, the Columbus City Council unanimously passed Ordinance No.

2244-2018 after three readings which instructed the Franklin County BOE to put the Columbus BOR on the November 6, 2018 ballot. The City delivered the ordinance to the BOE on August 1, 2018.

136. On August 24, 2018, the Franklin County BOE voted 4-0 to reject the Columbus BOR from the ballot for the reason that the "initiative petition proposing the Community Bill of Rights is invalid and that the provisions of the petition fall outside the scope of a municipal political subdivision's authority to enact by initiative because of limitations placed by Sections 3 and 7 of Article XVIII of the Ohio Constitution, noting the particular bases that the proposal calls for the regulation of oil and gas extraction and transportation, the regulation of corporations, and the creation of new causes of action."

137. Board of Elections member Brad K. Sinnott, a practicing corporate lawyer in Columbus, uniquely summarized the unconstitutional commands of O.R.C. §§ 3501.11(K) and 3501.38(M) wrought by passage of House Bill 463 in 2016 this way:

> Now, before describing what the General Assembly has instructed us to do in this instance, I will note a couple of things that have occurred to me as I reflected on this matter. First, the instruction given to us by the General Assembly is one that a Board of Elections is ill-equipped to follow. ***It's an instruction to perform a highly technical and complicated legal analysis relative to, among other things, the Home Rule provisions of Ohio's Constitution.***
>
> The members of the Board of Elections in this state are generally not lawyers. Where there are lawyers serving on boards, as is true of me, we sit as co-equal members of the board and we're not practicing law on behalf of the board. ***The boards have no legal staff. The boards have no legal research capabilities. We have on staff no legal researchers or writers. The making of the determination required by the current statutes is a task ill-suited for a Board of Elections. Were I a legislator, I would vote against the adoption of such statutes.***
>
> I also share the concerns of the three justices who joined in the lead opinion in *Espen*, relative to the constitutionality of the statutes. ***It's hard to imagine a more clear instruction to an administrative body that it perform the judicial function of assessing***

*the constitutionality of a statute enacted by the General Assembly*. If I were a judge, I would hold the statutes unconstitutional, but I'm here today neither as a legislator nor a judge. I'm here today as a member of a county board of elections.

BOE Tr. 4-6 (Emphasis added).

138. Sinnott proceeded, nonetheless, to sponsor the motion to reject the Columbus BOR from the ballot, and to join the unanimous voice vote against it.

139. The Petition Committee sought expedited review under Ohio Supreme Court Rule of Procedure 12.08. The Ohio Supreme Court however, denied the writ of mandamus, holding that the Board of Elections had "clearly acted within their discretion by rejecting the petition because it would create new causes of action." *State ex rel. Bolzenius v. Preisse*, 2018-Ohio-3708, ¶ 12.

140. The fact that Defendant Franklin County BOE and the Ohio judiciary engaged in content- based pre-enactment review to keep the Columbus BOR off of the ballot violated Plaintiffs' First Amendment rights and the separation of powers doctrine.

141. Absent a court order protecting Plaintiffs' constitutional rights, Defendants, and Ohio's ballot access scheme enabling executive and judicial pre-enactment review, will continue to unlawfully interfere with Plaintiffs' constitutional rights.

**Toledoans for Safe Water**

142. In 2016, Toledoans who were appalled at the continued lack of a meaningful response to the 2014 Toledo Water Crisis, where toxins from a gigantic algae bloom in Lake Erie caused shutdown of the regional drinking water supply, founded the grassroots organization, Toledoans for Safe Water ("TSW"). The emergency termination of water service in 2014 to 500,000 people for 3 full days from agricultural nutrient pollution had garnered headlines on five continents, but the regulatory solutions to the obvious problem were distinctly underwhelming,

-34-

superficial and short-range. TSW's activist membership came together over concern for the worsening condition of Lake Erie water quality.

143. TSW determined to circulate a petition introducing the Lake Erie Bill of Rights ("LEBOR"), a city charter amendment with a "rights of nature" component securing a new legal basis for citizen intervention on the side of protecting the Lake Erie watershed for its sundry benefits and as a separate entity with standing and a corresponding right to exist.

144. Plaintiffs Markie Miller and Bryan Twitchell are residents of Toledo who with others asserted the right to initiative by preparing and collecting signatures for the proposed LEBOR amendment to the Toledo Municipal Charter from fall 2016 through summer of 2018. On August 6, 2018, Plaintiffs Miller and Twitchell as well as others in TSW turned in part-petitions bearing approximately 10,500 signatures to require placement of LEBOR on the next electoral ballot.

145. On August 10, 2018, the Lucas County Board of Elections notified the Clerk of Toledo City Council that at least 6,438 signatures were verified as those of current registered voters, easily surpassing the minimum requirement of 5,244 registered voter signatures and meeting the signature threshold required to qualify the initiative to the ballot.

146. On or about August 14, 2018, the Clerk of Toledo City Council, pursuant to § 5 of the Toledo Municipal Charter, instructed the BOE to put the LEBOR on the November 6, 2018 ballot for a public vote.

147. On August 28, 2018, the Board of Elections voted 4-0 to reject the LEBOR from the ballot because in the opinion of the BOE, the proposed Charter Amendment contains provisions that are purportedly beyond the scope of the City of Toledo to enact. In reaching its decision, the

BOE improperly reviewed the substance of the LEBOR, pre-election, claiming that the BOE was required by decisions of the Ohio Supreme Court to bar the initiative from the ballot.

148. Plaintiffs Miller and Twitchell, along with the other members of the committee sponsoring LEBOR, sued the Board of Elections in mandamus before the Ohio Supreme Court, alleging that the petition was technically valid, sufficient numbers of valid signatures were timely submitted on petition forms which complied with the requirements of statute, and that the BOE was prohibited by decisions of the Supreme Court from invalidating municipal initiatives from the ballot based on substantive evaluations of legality, citing *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections,* 2015-Ohio-3761, ¶ 4, 144 Ohio St. 3d 239, 240 and *Morris v. Macedonia City Council,* 71 Ohio St.3d 52, 55, 641 N.E.2d 1075 (1994).

149. The Ohio Supreme Court ruled in *State ex rel. Twitchell v. Saferin*, 2018-Ohio-3829, Case No. 2018-1238 (September 21, 2018) that the Committee of Petitioners failed to show "that the elections board abused its discretion in keeping the LEBOR off the ballot. The elections board relied on this court's decision in *State ex rel. Flak v. Betras*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, which held that elections boards are authorized 'to determine whether a ballot measure falls within the scope of the constitutional power of referendum or initiative,' *id.* at ¶ 11. . . ." *Twitchell* ¶ 6. The Court found no "abuse of discretion or disregard of the law in the election board's reliance on Flak given that Flak also involved proposed amendments to a city charter." *Id.*

150. Thirteen days later, on October 4, 2018, the Ohio Supreme Court in *State ex rel. Maxcy v. Lucas Cty. Bd. of Elections*, 2018-Ohio-4419, 154 Ohio St. 3d 1401, 111 N.E.3d 1 abrogated *Flak*, 152 Ohio St.3d 244, 2017-Ohio-8109, 95 N.E.3d 329, because it had "confused

the law by stating that a county board of elections has authority to determine whether a charter amendment exceeds the scope of authority to enact by initiative" when "boards of elections have no authority to review the substance of a proposed municipal-charter amendment; therefore, *Flak* should no longer be relied on as authority to the contrary." *Id.* at ¶ 13.

151. The fact that Defendant Lucas County BOE and the Ohio judiciary engaged in content-based pre-enactment review to keep the LEBOR off of the ballot violated Plaintiffs' First Amendment rights and runs contrary to the separation of powers doctrine.

152. The fact that the Ohio Supreme Court abrogated the decision upon which it and Defendant Lucas BOE originally relied further illustrates the dangers of pre-enactment review by both election officials and the judiciary.

153. The consequences of the Ohio Supreme Court's erroneous holding in *State ex rel. Twitchell v. Saferin,* 2018-Ohio-3829, Case No. 2018-1238 (September 21, 2018), in which it kept LEBOR off of the ballot, reverberate today as Plaintiffs Miller and Twitchell, and other members of TSW, were forced to continue to fight to place the LEBOR on the ballot.

154. In light of *State ex rel. Maxcy v. Lucas Cty. Bd. of Elections*, Defendant Lucas BOE should been left with no alternative but to certify the LEBOR for placement on the ballot. Yet, using Ohio's unconstitutional ballot access scheme, on or about December 10, 2018, a single individual filed a protest to keep the LEBOR off of the ballot, thereby subjecting Plaintiffs to more costly and time consuming litigation in an effort to place the LEBOR on the ballot.

155. Absent a court order protecting Plaintiffs' constitutional rights, Defendants, and Ohio's ballot access scheme enabling executive and judicial pre-enactment review, will continue to unlawfully interfere with Plaintiffs' constitutional rights and violate the separation of powers

doctrine.

**Meigs County Home Rule Committee**

156. In 2015, interested citizens came together to form the Meigs County Home Rule Committee ("MCHRC") to draft a proposed charter for county government. Plaintiff Howard was on the 2015 MCHRC for the proposed charter.

157. The group circulated initiative petitions for a proposed charter which included provisions that would have prevented the use of underground injection wells for disposal of hydraulic fracturing ("fracking") oil and gas drilling wastes, and implemented water protections. The aim was to secure ballot placement for the November 2015 general election.

158. To that end, in early July 2015 the petition committee timely filed petitions with the Meigs County Board of Elections ("Meigs BOE") that contained enough signatures for the initiative vote. The Meigs BOE verified the adequacy of the signature count and sent a letter to the Meigs County Commissioners to certify the initiative for ballot placement.

159. Rather than certifying the initiative for ballot placement in a timely fashion, the Meigs County Commissioners took issue with the language in the letter from the Meigs BOE. After having delayed its response to the certification request for one week, the Commissioners claimed that the Meigs BOE letter lacked required language and directives to place the initiative on the ballot, and refused to do so, instead referring the matter back to the Meigs BOE.

160. The Commissioners' delay in responding to the Meigs BOE made it so the Meigs BOE could not give a final report within the statutory 10-day window. Despite the fact that the Meigs BOE responded quickly with an amended certification report, at their July 14, 2015 meeting, the Commissioners refused to certify the proposed initiative by their deadline to certify

which was the next day. The Commissioners' stated reason was because the Meigs BOE had not acted within its statutory 10-day window.

161. The Commissioners used the Meigs BOE's technical failure to act with finality before the 10-day statutory deadline -- a failure induced by the Commissioners themselves -- as their excuse to not comply with their own statutory deadline to certify the initiative for placement on the ballot.

162. In 2015, Plaintiff Howard participated as a plaintiff in a lawsuit against Meigs County Commissioners to place the proposed initiative on the ballot.

163. More than a year after the Commissioners' obstructive acts, the Ohio Supreme Court resolved the matter in the initiative proponents' favor. In *State ex rel. Meigs County Home Rule Committee v. Meigs County Board of Commissioners*, 68 N.E.3d 781, 148 Ohio St.3d 63, 2016-Ohio-5658 (2016) it held that "when the board of elections ultimately certifies the validity of a petition and the delay was not the fault of the initiative's supporters, a writ of mandamus will issue to place the matter on the ballot." However, because the Ohio Supreme Court did not decide the matter until 2016, more than a year after committee petitioners first requested placement of the county charter initiative on the ballot, it was never presented to voters.

164. In 2016, the Meigs County Home Rule Committee circulated another initiative petition for a county charter that contained similar water protections and a related prohibition against fracking. This time it was then-Secretary of State Jon Husted who prevented the initiative from being placed on the ballot.

165. In 2016, Plaintiff Howard was part of a mandamus action against Defendant Secretary of State seeking a court order requiring him to place the proposed charter on the ballot.

166. In that case -- *State ex rel. Coover v. Husted*, 148 Ohio St.3d 332, 70 N.E.3d 587, 2016-Ohio-5794 (2016) -- the Ohio Supreme Court reinforced the Secretary of State's unlawful content-based review and declined to require placement of the Meigs charter proposal on the ballot.

167. In upholding the Secretary of State's unlawful decision, the Court allowed election officials to discretionarily determine whether a proposed county charter is invalid by reviewing its content for compliance with the Ohio Constitution.

168. The supposedly offending provision of the Meigs charter proposal assigned county governmental officers the powers vested in, and performance of duties imposed upon county officers by, "general law." The Court found that to be an insufficient description of Meigs county officials' responsibilities, because voters would have to consult legal sources outside the charter proposal to determine the elected officers' "duties" purported to be established.

169. In according such discretion to elections officials, the Ohio Supreme Court permitted substantive, content-based review of a proposed initiative by election officials, and itself engaged in impermissible pre-enactment content-based review, in violation of Plaintiffs' constitutional rights and the separation of powers doctrine.

170. The Ohio Supreme Court allowed election officials to arbitrarily interpret the county initiative provision contained in the Ohio Constitution. Doing so effectively prevents petitioners from exercising their right to initiative because it is impossible for them to know all of the requirements that election officials and the courts may impose, pre-enactment, based on their interpretations.

171. Indeed, the petitioners in Meigs followed the same format as prior county charters

that had been allowed to proceed to the ballot. Incorporating "general law" had been accepted practice until then-Secretary of State Husted suddenly and arbitrarily decided it was not. (And as covered below in the section on Sustainable Medina County, after twice approving the striking of ballot initiatives because the proposed charters incorporated county powers and duties imposed by "general law," the Ohio Supreme Court in 2017 approved the striking of an initiative because the proposed charter did not contain such a provision.)

172. Defendants' content-based and legal review of the proposed charters – which also happens to be inconsistent and arbitrary -- is unconstitutional.

173. Despite the moving target that is the pre-enactment application of purported constitutional requirements by election officials, the MCHRC revised its proposed charter in an attempt to address the contradictory and vague directions given in previous court decisions.

174. In 2018, Plaintiff Howard and other members of the MCHRC actively solicited signatures for a third attempt at a county charter to put on the 2019 general election ballot.

175. Absent a court order protecting Plaintiffs' constitutional rights, Defendants, and Ohio's ballot access scheme enabling pre-enactment executive and judicial review, will continue to unlawfully interfere with Plaintiffs' constitutional rights and violate the separation of powers doctrine.

**Athens Community Bill of Rights Committee**

176. The Athens Community Bill of Rights Committee ("ACBORC") formed in 2013 as a coalition of activists concerned about oil and gas hydraulic fracturing and the practice of using injection wells for disposal of its wastes on the county's water supply. Plaintiffs Bryant and Wiley are active members of ACBORC.

177. In 2015, the ACBORC decided to propose a county charter since much of the waste injection was going into townships outside the city limits. The ACBORC circulated petitions and submitted the proposed county charter for ballot placement.

178. The Athens County BOE refused to certify the proposed county charter for placement on the ballot. After the ACBORC lodged a formal protest, the BOE forwarded the protest to the Secretary of State's office for review.

179. Then-Secretary of State Jon Husted refused to put the Athens County Charter proposal on the ballot for two reasons: (1) the proposal failed to create an "alternative form of government" by not providing for the election or appointment of a county executive or any change in the structure of county government; and (2) the substantive prohibition on hydraulic fracturing in the proposal conflicted with exclusive pre-emptive authority of the State of Ohio to regulate oil and gas operations in Ohio.

180. ACBORC, along with county charter bill of rights committees in Medina and Fulton Counties, filed a mandamus action in the Ohio Supreme Court.

181. The Court refused to order placement of the proposed measures on the ballot, thereby allowing election officials to serve as "gatekeepers" in violation of the First Amendment. *State ex rel. Walker v. Husted,* 144 Ohio St.3d 361, 43 N.E.3d 419, 2015-Ohio-3749 (2015).

182. In 2016, ACBORC mobilized again with a somewhat modified county charter proposal, attempting to address the Court's cryptic instructions as to the minimum requirements for a charter amendment.

183. When presented to the Athens County BOE to be certified for placement on the ballot, the BOE conducted an impermissible content-based review and rejected the petition based

on its content in particular, because it supposedly failed to alter the form of government, failed to vest powers from the municipalities and townships with the county, and relied on the Ohio Revised Code to determine the qualifications and salaries of elected officials.

184.  The Ohio Supreme Court again denied ballot access by upholding the Athens County BOE's unconstitutional content-based review and by engaging in its own unconstitutional pre-enactment content-based review. *State ex rel. Coover v. Husted*, 148 Ohio St.3d 332, 70 N.E.3d 587, 2016- Ohio-5794, ¶ 17 (2016).

185.  In 2017, the Athens Committee continued to campaign for a county charter containing a community bill of rights. The Athens Committee again made some substantive changes to the content of the proposed county charter in an effort to accommodate the arbitrary standards imposed by election officials and in anticipation of the judiciary's unlawful content-based  review.

186.  The Athens County BOE yet again unanimously refused to certify the petition to the November 2017 general election ballot. After conducting an  unconstitutional content-based review, the BOE concluded that the proposed county charter did not adequately provide for an alternative form of county government, that the charter contained provisions that are outside the initiative power because they are not within a county's authority to enact, and that the proposal failed to provide for the exercise of all powers and duties of county government.

187. After achieving no relief by protesting the BOE's decision to Defendant Ohio Secretary of State, ACBORC, along with the petitioning committee in Medina County (which, as alleged below, had been similarly rebuked in petitioning for a county charter with a community rights component) sued their respective boards of elections in mandamus. In the resulting

decision, *State ex rel. McGinn v. Walker*, 87 N.E.3d 204, 151 Ohio St.3d 199, 2017-Ohio-7714, ¶ 17 (2017), the Ohio Supreme Court affirmed the Boards of Elections, and was once again complicit in unconstitutional pre-enactment content-based review.

188. Defendants' inconsistent and arbitrary content-based and legal review of the proposed charters is unconstitutional.

189.  Absent a court order protecting Plaintiffs' constitutional rights, Defendants, and Ohio's ballot access scheme enabling pre-enactment executive and judicial review will continue to unlawfully interfere with Plaintiffs' constitutional rights and violate the separation of powers doctrine.

**Sustainable Medina County**

190. Sustainable Medina County ("Sustainable Medina") is an unincorporated community group of concerned residents that was founded in 2014, with all members resident in Medina County, Ohio. The group advocates for local, direct democratic control over energy policy and fossil fuel projects taking place within the county.  Sustainable Medina's members have continuously opposed construction of the NEXUS, LLC gas mega-pipeline across northern Ohio and through Medina County because of the environmental damage it has induced and because it contradicts the public interest.

191. Plaintiffs Jones and Dolcini actively participate in Sustainable Medina, collecting signatures and coordinating the efforts.

192. Starting in 2015, Sustainable Medina members annually drafted and proposed three county charters to alter the form of government in Medina County. In 2015, 2016 and 2017, Sustainable Medina members gathered, on average, more than 6,000 signatures annually to place

those proposals on the ballot.

193. The county charters were intended to empower county officials to create and pass local legislation, and to institute a charter county that extended the right to initiate legislation to residents of unincorporated parts of the county.

194. Sustainable Medina County's charters reformed county government offices and responsibilities and further included provisions creating the rights of nature; prohibited hydraulic fracturing for oil and gas (fracking) in the county; prohibited injection wells for disposal of oil and gas wastes; and banned commercial transport pipelines from traversing Medina County.

195. In 2015, 2016, and 2017 Plaintiff Jones served on petition committees, collected signatures, and was named on legal filings.

196. Plaintiff Dolcini has been similarly involved for multiple years by either serving on petition committees, collecting signatures, or by being a party to legal filings.

197. In July 2015, Sustainable Medina County submitted its first initiative petition for a proposed county charter to Defendant Medina BOE. After Defendant Medina BOE certified the petition to then-Secretary Husted's office, an individual opposed to the measure filed a protest.

198. On August 13, 2015, then-Secretary Husted upheld the protest, invalidated the petition, and ordered that the charter proposal not appear on the general election ballot.

199. Plaintiffs Jones and other members of Sustainable Medina sued in mandamus in the Ohio Supreme Court. *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 43 N.E.3d 419, 2015-Ohio-3749 (2015).

200. In the resulting decision, the Ohio Supreme Court affirmed Defendant election officials and was complicit in unconstitutional pre-enactment content-based review. The Court

incorrectly found in favor of then-Secretary Husted, upholding his content-based review to conclude that a provision incorporating general law by reference did not satisfy a newly imposed requirement that a charter must contain within its four corners an adequate description of the form of proposed county government, and did not contain an explanation of which county officers shall be elected and the manner of their election.

201. Undaunted, but frustrated, in 2016, Sustainable Medina circulated a modified county charter petition. The group filed sufficient signatures on a county charter initiative for certification to the November 2016 ballot.

202. Defendant Medina County BOE split, 2-2 on the certification question, which necessitated that the matter be forwarded to then-Secretary Husted for resolution. Secretary Husted broke the tie by engaging in unconstitutional content-based review and concluding that the proposed charter did not provide for the performance of all duties imposed on county officers by general law and did not establish a structural change in the county government–something which the Ohio Constitution does not require.

203. Plaintiffs again sued in the Ohio Supreme Court for mandamus relief. *State ex rel. Jones v. Husted*, 65 N.E.3d 733, 147 Ohio St.3d 341, 2016-Ohio-5681 (2016).

204. This time Plaintiffs were confronted with the imposition of *ad hoc* and inadequate procedures in violation of their First Amendment rights. The Ohio Supreme Court declined to consider Plaintiffs' arguments as to why the proposed measure should have been placed on the ballot; instead, they faulted petitioners for failing to pursue their "adequate remedy in the ordinary course of law", namely, either (1) a protest of the board's decision before the secretary of state under O.R.C. § 307.95 or (2) a request that the BOE bring an action in the common pleas

court to establish the validity of the petition under O.R.C. § 307.94. *Id.* at 344. Because the time had elapsed for the pursuit of either remedy, petitioners, including Plaintiff Jones, were denied ballot access.

205. A bright-line rule against content-based pre-enactment review would have headed off the assault on Plaintiffs' ability to exercise their citizen lawmaking power in accordance with the First Amendment.

206. In 2017, Sustainable Medina introduced a new, modified county charter proposal seeking a restructuring of the county government and legislating of a local bill of rights that included a ban on natural gas mega-pipelines. The proposed county charter included a detailed description of powers and duties of each elected official. Unlike in prior years, the proposed charter did not incorporate powers and duties by reference to general law, because for two years in a row, the Ohio Supreme Court said that was impermissible, that the charter must contain everything within its four corners.

207. Yet, Defendant Medina County BOE voted 3-1 against certification of the petition because, based on its impermissible content-based review, the proposed charter did not adequately provide for an alternative form of county government, and further, because the proposal supposedly contained provisions outside of the initiative power as not falling within a county's authority to enact.

208. Sustainable Medina protested the Medina County BOE's decision to then-Secretary of State Husted, who declined to rule on it because he believed that the petitioners were precluded from protesting further by having contemporaneously pursued the O.R.C. § 307.94 common pleas hearing option, thereby foreclosing any other option.

-47-

209. Sustainable Medina County joined with the Athens County Bill of Rights Committee to sue for mandamus in *State ex rel. McGinn v. Walker*, 87 N.E.3d 204, 151 Ohio St.3d 199, 2017-Ohio-7714 (2017).

210. The Ohio Supreme Court engaged in its own unconstitutional pre-enactment content- based review to impose a new rule requiring the Medina charter proposal to contain a "catch-all provision" which incorporated by reference all duties of county officials not specifically spelled out in the proposal. *Id.* at ¶¶ 22, 23. This ruling was irrational, arbitrary, and capricious, as it was directly contrary to the Court's ruling the prior two years, in which it had said that inclusion of catch-all provisions in the proposed charters was not allowed, because the charter must contain everything within its four corners.

211. Sustainable Medina had simultaneously pursued non-mandamus relief in the Medina County Common Pleas Court as provided by O.R.C. § 307.94, but was denied any relief.

212. That court affirmed Defendant Medina County BOE, and Sustainable Medina promptly appealed to the Ninth Ohio District Court of Appeals. *County Charter Proposal Committee of Petitioners v. Medina County Board of Elections*, Ninth Dist. Ct. App. No. 17CA0055.

213. Despite the matter having been placed on the Court of Appeals' accelerated docket for disposition, a ruling of mootness was entered on October 6, 2017, based on the Ohio Supreme Court's ruling in *McGinn* (the mandamus action), dated September 21, 2017. *Charter Proposal Committee of Petitioners v. Medina County Board of Elections,* Ninth Dist. Ct. App. No. 17CA0055 (Oct. 6, 2017) (Slip op.).

214. Sustainable Medina County moved the Ohio Supreme Court to certify the case based

on arguments the appellate court had declined to decide when it ruled the appeal moot. The Supreme Court declined to certify the case, leaving important issues unaddressed by any court and keeping the charter off the ballot. *County Charter Proposal Committee of Petitioners v. Medina County Board of Elections*, 96 N.E.3d 299, 2018-Ohio-1600 (S.Ct. 2018).

215.  Plaintiffs' inability to obtain effective redress in the courts further illustrates the need for a bright-line rule against content-based pre-enactment review whether by election officials or the judiciary.

216. Defendants' inconsistent and arbitrary content-based and legal review of the proposed charters is unconstitutional.

217. Absent a court order protecting Plaintiffs' constitutional rights, Defendants and Ohio's ballot access scheme enabling pre-enactment executive and judicial review will continue to unlawfully interfere with Plaintiffs' constitutional rights and violate the separation of powers doctrine.

**Portage Community Rights Group**

219. In 2011, a grassroots group concerned about the community's water, air, and soil emerged in Portage County, Ohio. In 2015, the group officially became the Portage County Community Rights Group. The Portage County Community Rights group came together to initiate and sponsor a vote on a proposal to convert the Portage County government to a charter form.  Besides altering the structure of county government, the new charter contained prohibitions on fracking and injection well usage to dispose of fracking-related wastes.

220. Plaintiffs Fischer and Rae are part of the Portage Community Rights Group and have served on petition committees and collected signatures for petitions, and Plaintiff Fischer has

been named on legal filings.

221. In July 2016, Plaintiffs and the group turned in petitions containing at least 4,283 valid signatures.

222. Defendant Portage BOE engaged in unconstitutional content-based review and voted to keep the proposal off the ballot because the governmental structure ostensibly did not provide for a county executive position (a requirement manufactured by Defendant Portage County BOE).

223. The group timely filed a protest with then-Secretary Husted.

224. On August 15, 2016, then-Secretary Husted issued a decision denying the protest and instructing the Portage County BOE to not place the proposed Portage county charter on the ballot. In denying relators' protests, Secretary Husted reasoned that the petitions were invalid because the proposed charter failed to provide for the performance of all duties imposed on county officers and because the proposed charter failed to provide for either an elective or appointive county executive.

225. The Portage County Community Rights Group, including Plaintiff Fisher, sought relief in mandamus in the Ohio Supreme Court.

226. In *State ex rel. Coover v. Husted*, 148 Ohio St.3d 332, 70 N.E.3d 587, 2016-Ohio-5794 (2016), the Ohio Supreme Court itself engaged in unconstitutional content-based review and affirmed the unlawful principle that Defendants elections officials may discretionarily determine whether a proposed county charter is invalid by reviewing its substance and concluding that it does not set forth the form of government being proposed.

227. In 2017 the Portage County Community Rights Group again circulated petitions, but

fell short of collecting the required number of signatures by the deadline.

228. In 2018, the group, including Plaintiffs Fischer and Rae, began actively collecting signatures aimed at putting a county charter proposal on the 2019 general election ballot.

229. Defendants' inconsistent and arbitrary content-based and legal review of the proposed charters is unconstitutional.

230. Absent a court order protecting Plaintiffs' constitutional rights, Defendants, and Ohio's ballot access scheme enabling pre-enactment executive and judicial review, will continue to unlawfully interfere with Plaintiffs' constitutional rights and violate the separation of powers doctrine.

## CAUSES OF ACTION

### Count 1
### Facial First Amendment challenge against all Defendants for enforcing content-based restriction

231. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in paragraphs 1-231 as if fully rewritten herein.

232. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)a(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, are unconstitutional under the First Amendment (as applied to the state through the Fourteenth Amendment) because they impose severe burdens and unreasonable restrictions on ballot access.

233. Plaintiffs are severely burdened by these specific Ohio election laws and by Ohio's ballot access scheme which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary. Such review constitutes both unlawful content-based restriction that interferes with core political speech, violates voters' fundamental

right to vote, and inhibits citizens from reforming or altering their current form of government.

234. Defendants do not have any interests that could justify such burdens so as to survive strict scrutiny or any other standard of review under the First Amendment.

235. Defendants' enforcement of O.R.C.§§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and of Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary, facially violates the First and Fourteenth Amendments.

236. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys' fees, and any other relief as the Court deems just and proper.

**Count 2**
**As-Applied First Amendment challenge against all Defendants for enforcing content-based restriction**

237. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in paragraphs 1-237 as if fully rewritten herein.

238. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, are unconstitutional under the First Amendment (as applied to the state through the Fourteenth Amendment) because they impose severe burdens and unreasonable restrictions on ballot access, which violates core political rights.

239. Plaintiffs are severely burdened by Ohio's ballot access scheme, which allows content- based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary. Such review constitutes unlawful content-based restriction that

interferes with core political speech and petition for redress of grievances, violates voters'
fundamental right to vote, and inhibits citizens from reforming or altering their current form of
government.

240. Defendants do not have any interests that could justify such burdens so as to survive
strict scrutiny or any other standard of review under the First and Fourteenth Amendments.

241. Defendants' enforcement of O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2),
3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and
of Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of
proposed ballot measures by election officials and the judiciary, violates the First and Fourteenth
Amendments as applied.

242. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys'
fees, and any other relief as the Court deems just and proper.

**Count 3**
**Facial First Amendment challenge against all Defendants for enforcing prior restraint**

243. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in
paragraphs 1-242 as if fully rewritten herein.

244. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and
3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, are unconstitutional
under the First Amendment (as applied to the state through the Fourteenth Amendment) because
they impose severe burdens and unreasonable restrictions on ballot access.

245. Plaintiffs are severely burdened by these specific Ohio election laws and by Ohio's
ballot access scheme, which allows content-based, substantive pre-enactment review of proposed
ballot measures by election officials and the judiciary. Such review constitutes unlawful prior

restraint that interferes with core political speech, violates voters' fundamental right to vote, and inhibits citizens from reforming or altering their current form of government.

246. Defendants do not have any interests that could justify such burdens so as to survive strict scrutiny or any other standard of review under the First Amendment.

247. Defendants' enforcement of O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and of Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary, facially violates the First and Fourteenth Amendments.

248. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys' fees, and any other relief as the Court deems just and proper.

**Count 4**
**As-Applied First Amendment challenge against all Defendants for enforcing prior restraint**

249. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in paragraphs 1-248 as if fully rewritten herein.

250. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, are unconstitutional under the First Amendment (as applied to the state through the Fourteenth Amendment) because they impose severe burdens and unreasonable restrictions on ballot access, which violates core political rights.

251. Plaintiffs are severely burdened by Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary. Such review constitutes unlawful prior restraint that interferes with

core political speech and petition for redress of grievances, violates voters' fundamental right to vote, and inhibits citizens from reforming or altering their current form of government.

252. Defendants do not have any interests that could justify such burdens so as to survive strict scrutiny or any other standard of review under the First and Fourteenth Amendments.

253. Defendants' enforcement of O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and of Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary, violates the First and Fourteenth Amendments as applied.

254. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys' fees, and any other relief as the Court deems just and proper.

**Count 5**
**Violation of First Amendment Assembly and Petition clauses and Fourteenth Amendment of the United States Constitution**

255. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in paragraphs 1-254 as if fully rewritten herein.

256. The United States Constitution First Amendment is incorporated to apply to the states, and reads in part: "Congress shall make no law . . . abridging . . . the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

257. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, are unconstitutional under the First Amendment (as applied to the state through the Fourteenth Amendment) because they impose severe burdens and unreasonable restrictions on ballot access, which violates core

political rights.

258. Plaintiffs are severely burdened by Ohio's ballot access scheme, which prevents their ability to associate for political change by allowing executive and judicial officials to veto their duly-qualified proposed charters, charter amendments, and ordinance initiatives from appearing on the ballot.

259. Defendants do not have any interests that could justify such burdens so as to survive strict scrutiny or any other standard of review under the First and Fourteenth Amendments.

260. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys' fees, and any other relief as the Court deems just and proper.

**Count 6**
**Violation of Right of Local, Community Self-Government Pursuant to Substantive Due Process Clause of the Fourteenth Amendment**

261. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in paragraphs 1-260 as if fully rewritten herein.

262. The Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., Amendment XIV. Rights protected by the Substantive Due Process clause include unenumerated rights which are so rooted in the traditions and conscience of our people as to be ranked as fundamental.

263. The right of local, community self-government is so rooted in the traditions and conscience of our people as to be ranked as fundamental. It is so fundamental that its principles are the architecture for the Preamble of the U.S. Constitution.

264. Substantive due process also guards against governmental power being used for

purposes of oppression. *See Daniels v. Williams*, 474 U.S. 327, 331 (1986).

265. Defendants have infringed, and absent declaratory and injunctive relief will continue to infringe, Plaintiffs' inherent and fundamental right of local, community self-government as expressed through the exercise of direct democracy and as secured by the Substantive Due Process clause of the Fourteenth Amendment by imposing an arbitrary, irrational, and fundamentally unfair ballot access scheme.

266. In reviewing proposed initiatives, Defendants apply vague and arbitrary rules, standards, and procedures such that Plaintiffs have no clear guidance as to whether a proposed initiative will be placed on the ballot.

267. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary, violates Plaintiffs' right of local, community self-government as expressed through the exercise of direct democracy by interfering with, and arbitrarily limiting, how the people may propose a charter, charter amendment, or ordinance.

268. Defendant election officials' arbitrary content-based review of proposed ballot measures is also fundamentally unfair because it allows people in one jurisdiction to place a proposed measure on the ballot while preventing ballot access for a same or similar measure in another jurisdiction. It also empowers Defendants to block initiatives from the ballot in the same jurisdiction in one year for one reason, and in a subsequent year for another reason, one that is expressly opposite from and contradictory to the reasoning used in the prior year.

269. Defendants' conduct not only violates the fundamental right of local, community

self-government, but it is conscience shocking insofar as Defendants repeatedly and arbitrarily can oppress the exercise of direct democracy. Defendants' abuse of power directly oppresses Plaintiffs' right to have a voice in self-government by preventing measures from being placed on the ballot.

270. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys' fees, and any other relief as the Court deems just and proper.

**Count 7**
**The Unenumerated Rights Preserved for the People by the Ninth Amendment**

271. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in paragraphs 1-270 as if fully rewritten herein.

272. The inherent right of local, community self-government is fundamental to our ordered scheme of liberty and is deeply rooted in this nation's history and tradition. It is so fundamental that its principles are the architecture for the Preamble of the U.S. Constitution. Without the right of local, community self-government, the freedoms of self-governance fought for in the American Revolution are empty. Our nation's founders intended that the people would have the right to alter, abolish, or reform their local government.

273. The Ninth Amendment of the United States Constitution provides that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

274. Among the implicit liberties preserved for the people and protected from government intrusion by the Ninth Amendment is the inherent and fundamental right of local, community self-government, including the exercise of that right as expressed through the exercise of direct democracy.

275. Defendants' perpetuation of Ohio's unconstitutional ballot access scheme interferes with the exercise of direct democracy so as to violate the people's right of local, community self-government as preserved for the people by the Ninth Amendment.

276. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary, violates Plaintiffs' right of local, community self-government as expressed through the exercise of direct democracy, by interfering with, and arbitrarily limiting, how the people may propose a charter, charter amendment, or ordinance.

277. Defendants elections officials' arbitrary content-based review of proposed ballot measures is also fundamentally unfair because it allows people in one jurisdiction to place a proposed measure on the ballot while preventing ballot access for a same or similar measure in another jurisdiction. It also empowers Defendants to block initiatives from the ballot in the same jurisdiction in one year for one reason, and in a subsequent year for another reason, one that is expressly opposite from and contradictory to the reasoning used in the prior year.

278. Defendants' conduct not only violates the fundamental right of local, community self-government, but it is conscience shocking insofar as Defendants repeatedly and arbitrarily oppress the exercise of direct democracy. Defendants' abuse of power directly oppresses Plaintiffs' right to have a voice in self-government preventing measures from being placed on the ballot.

279. Defendants have infringed, and absent declaratory and injunctive relief, will continue to infringe, Plaintiffs' fundamental constitutional rights.

280. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys' fees, and any other relief as the Court deems just and proper.

**Count 8**
**Violation of Separation of Powers Doctrine (under Ohio law)**

281. Plaintiffs hereby incorporate all of the claims, allegations and assertions set forth in paragraphs 1-280 as if fully rewritten herein.

282. Under the separation of powers doctrine as articulated in Ohio law, "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rel. Johnston v. Taulbee*), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80 (1981). The judiciary has both the power and the solemn duty to determine the constitutionality and validity of acts by other branches of the government and to ensure that the boundaries between branches remain intact. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462, 715 N.E.2d 1062 (1999).

283. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3) and Defendants otherwise unlawful substantive, content-based pre-enactment review, violates separation of powers by allowing the Defendants to conduct constitutional review of the substance and content of proposed measures. Only the judiciary has the power to do constitutional judicial review, and that power can only be exercised to review a law, not a proposed law, and thus judicial review must only be exercised after a proposed law has been enacted.

284. O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3), and Ohio's ballot access scheme, which allows substantive, content-based pre-

enactment review by election officials and the judiciary, violates separation of powers by interfering with the people's exercise of their lawmaking powers. Such review crosses the boundaries between branches of government.

285. Just as the judiciary cannot review legislation proposed by legislative bodies before it is enacted, either for its legality or for whether it is within the scope of the legislature's authority to enact, neither the judiciary nor the boards of elections should be permitted to review legislation proposed by the people before it is enacted.

286. Wherefore, Plaintiffs seek declaratory and injunctive relief, costs, and attorneys' fees, and any other relief as the Court deems just and proper.

## Prayer for Relief

Wherefore, Plaintiffs seek a court order declaring:

(1) That the provisions of O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3) that permit substantive, content-based review are facially unconstitutional;

(2) That the provisions of O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3) that permit substantive, content-based review are unconstitutional as applied;

(3) That Ohio's ballot access scheme, which allows substantive, content-based pre-enactment review by election officials and the judiciary, violates the First and Fourteenth Amendments;

(4) That Ohio's ballot access scheme, which allows substantive, content-based pre-enactment review by election officials and the judiciary, violates Ohio's separation of powers

doctrine;

(5)  That Ohio's ballot access scheme, which allows substantive, content-based pre-enactment review by election officials and the judiciary, violates the people's right of local, community self-government.

Further, Plaintiffs seek preliminary and permanent injunctive relief, enjoining Defendants from:

(1) engaging in any content-based substantive pre-enactment review of proposed ballot measures, including, but not limited to, whether a proposed measure is within a county or municipalities "scope of authority" or whether it is considered legislative or administrative in nature;

(2) applying the invalid provisions of O.R.C. §§ 307.95, 307.95( C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3); and

(3) employing Ohio's ballot access scheme to allow substantive, content-based pre-enactment review by election officials or the judiciary.

Additionally, Plaintiffs seek:

(1) An award of attorneys' fees and costs as prevailing parties pursuant to 42 U.S.C. § 1988; and

(2) Such other and further relief as the Court deems just and proper.

February 1, 2019                          */s/  Terry J. Lodge*
                                          Terry J. Lodge, Esq.
                                          316 N. Michigan St., Suite 520
                                          Toledo, OH 43604-5627
                                          (419) 205-7084
                                          tjlodge50@yahoo.com
                                          lodgelaw@yahoo.com
                                          Counsel for Plaintiffs