**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
Eastern Division**

---

**Susan Beiersdorfer *et al.*,**

Plaintiffs,

v.

**Frank LaRose *et al.*,**

Defendants.

No. 4:19-cv-00260

The Honorable Benita Y. Pearson

**Plaintiffs' Opposition to Defendant Ohio Secretary of State's Motion to Dismiss**

*Oral Argument requested*

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT OHIO SECRETARY OF STATE'S
MOTION TO DISMISS**

May 20, 2019

i

## Table of Contents

Table of Authorities..................................................................................................................iv

SUMMARY OF ARGUMENT......................................................................................................1

BACKGROUND............................................................................................................................3

    I.   County Charters................................................................................................................4

    II.  Municipal Charters...........................................................................................................5

    III. Municipal Ordinances.....................................................................................................6

ARGUMENT.................................................................................................................................7

    I.   Plaintiffs Have Stated Claims for Violation of the First Amendment in Counts 1 -
       4.....................................................................................................................................7

      A.  Ohio's Unlawful Ballot Access Scheme Violates Plaintiffs' First Amendment
          Rights.................................................................................................................7

      B.  Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1),
          3501.39(A)(3) are content-based restrictions on speech.....................................12

      C.  Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1),
          3501.39(A)(3) are prior restraints on speech......................................................13

      D.  Ohio's Interests Do Not Justify the Severe Burden Imposed on Plaintiffs'
          Constitutional Rights............................................................................................16

    II.  Plaintiffs Have Stated First Amendment Assembly and Petition Clause
       Constitutional Challenges........................................................................................17

    III. Plaintiffs Have Stated a Fourteenth Amendment Substantive Due Process Claim.
       .......................................................................................................................17

    IV. Plaintiffs Have Stated a Claim under the Ninth Amendment................................18

    V.  Plaintiffs Have Stated a Claim for Violation of the Separation of Powers Doctrine
       Under Ohio Law.......................................................................................................19

CONCLUSION.........................................................................................................................19

Certificate of Memorandum Length........................................................................................20

Certificate of Service........................................................................................................21

**Table of Authorities**

**Cases**

*Abernathy*, see *State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*

*Aey v. Mahoning Cty. Bd. of Elections*,
No. 4:08 CV 405, 2008 WL 554700 (N.D. Ohio Feb. 26, 2008)........................14

*Anderson v. Celebrezze*, 460 U.S. 780 (1983)...............................................10, 16

*Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182 (1999)...............................1

*Burdick v. Takushi*, 504 U.S. 428 (1992).............................................................................2

*Carrigan*, see *Nevada Comm'n on Ethics v. Carrigan*

*Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir.1998)............................15

*City of Cuyahoga Falls v. Buckeye Community Hope Foundation*,
538 U.S. 188 (2003)...............................................................................................1, 7

*Clingman v. Beaver*, 544 U.S. 581 (2005)...........................................................................8

*Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*,
885 F.3d 443 (6th Cir. 2018)...........................................................................9, 12-13

*Espen*, see *State ex rel. Espen v. Wood Cty. Bd. of Elections*

*Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214 (1989)...............8

*Federal Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 118 N.E. 103 (1917)......17

*Green Party of Tennessee v. Hargett*, 767 F.3d 533 (6th Cir. 2014)..................................15

*Herrington v. Cuevas*, 1997 WL 703392 *9 (S.D.N.Y. 1997)..............................................1

*Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082 (10th Cir. 2006)..........................12

*Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750 (1988).................................................14

*Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579 (6th Cir. 2006)..........................9-10

*Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803)...............................18

*Marijuana Policy Project v. United States*, 304 F.3d 82 (D.C. Cir. 2002)........................11

*Maxcy*, see *State ex rel. Maxcy v. Saferin*

*Meyer v. Grant*, 486 U.S. 414 (1988).........................................................................1, 7-9

*Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011)......................................10-11

*Ohio Ballot Board*, see *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*

*Schmitt v. Husted*, 341 F. Supp. 3d 784 (S.D. Ohio 2018)....................................................2

*State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, 2019-Ohio-201...........................5-6

*State ex rel. Espen v. Wood Cty. Bd. of Elections*,
2017-Ohio-8223, 154 Ohio St. 3d 1, 110 N.E.3d 1222....................................................3, 6

*State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981)...............3, 19

*State ex rel. Maxcy v. Saferin*, 2018-Ohio-4035 (2018)....................................................5-6

*State ex rel. Ohio Academy of Trial Lawyers v. Sheward*,
86 Ohio St.3d 451, 715 N.E.2d 1062 (1999)......................................................................19

*State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753............................3

*Taxpayers United for Assessment Cuts v. Austin*,
994 F.2d 291 (6th Cir. 1993)..............................................................................2, 10-11, 14

*Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir. 2005)......................................................9, 16

*Wyman v. Secretary of State*, 625 A.2d 307, 312 (Me. 1993)..............................................1

### Constitutional Provisions

Oʜɪᴏ Cᴏɴsᴛ., Art. II, § 1f.......................................................................................................6

Oʜɪᴏ Cᴏɴsᴛ., Art. X, § 3.......................................................................................................4

Oʜɪᴏ Cᴏɴsᴛ., Art XVIII, § 7..................................................................................................5

Oʜɪᴏ Cᴏɴsᴛ., Art XVIII, § 9..................................................................................................5

### Statutes

O.R.C. § 307.95.......................................................................................3-4, 7, 12-13

O.R.C. § 3501.11.................................................................................3-4, 6-7, 12-13

O.R.C. § 3501.38.................................................................................3-4, 6-7, 12-13

O.R.C. § 3501.39.......................................................................................3, 7, 12-13

**Secondary Sources**

Kurt T. Lash, *A Textual-Historical Theory of the Ninth Amendment*,
60 STAN. L. REV. 895, 935 (2008)......................................................................................18

Plaintiffs hereby oppose Defendant Ohio Secretary of State Frank LaRose's ("SOS")

Motion to Dismiss. (ECF No. 38, hereinafter "MTD.")

## SUMMARY OF ARGUMENT

In this case of first impression within the Sixth Circuit jurisidiction, Plaintiffs challenge

specific constitutional defects in Ohio's ballot access scheme particular to Ohio's election laws

and the discretion afforded Ohio election officials and the state judiciary under that scheme.

Plaintiffs allege that their actions in seeking to place proposed measures on the ballot constitute

core political speech. Defendant SOS overstates its case in suggesting that the First Amendment

clearly does not apply to such activity as a matter of law. (MTD at 1.) To the contrary, no ballot

access scheme like the one challenged here has survived First Amendment scrutiny.[1]

The Supreme Court's decisions in *Meyer v. Grant*, 486 U.S. 414 (1988) (overturning state's

prohibition on using paid petition circulators) and *Buckley v. Am. Constitutional Law Found.*, *Inc.*,

525 U.S. 182 (1999) (overturning various registration requirements for petition circulators),

together with its recognition of the importance of popular measures like initiatives and referenda

in *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 196 (2003),[2]

---

1  In fact, the Supreme Judicial Court of Maine has found that a similar ballot access scheme – vesting discretionary authority in election officials to determine the constitutionality of proposed measures pre-enacment – violated the First Amendment. *See Wyman v. Secretary of State*, 625 A.2d 307, 312 (Me. 1993) ("Because the petition process is protected by the first amendment and the Secretary has advanced no compelling interest in executive oversight of the content of the petition prior to its circulation for signature, his refusal to furnish the petition form based on the content of the proposed legislation impermissibly violated Wyman's rights protected by the first amendment."); *see also Herrington v. Cuevas*, 1997 WL 703392 *9 (S.D.N.Y. 1997) (Sotomayor, J.) (reviewing New York's law which allowed election clerks to decide whether a popular measure presented a proper subject and directing the parties to brief whether the law was content-based and subject to strict scrutiny).

2  In *City of Cuyahoga Falls v. Buckeye Community Hope Foundation*, 538 U.S. 188, 196 (2003), the Supreme Court recognized:

In assessing the referendum as a "basic instrument of democratic government," we have observed that "[p]rovisions for referendums demonstrate devotion to democracy, not to bias, discrimination, or prejudice." And our well established First Amendment

support Plaintiffs' allegations that Ohio's ballot access scheme implicates and violates core political rights protected by the First Amendment. Under Sixth Circuit precedent, too, this Court is indeed required to consider whether the restrictions Defendants have placed on the right to initiative violate the federal Constitution. *See Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 295 (6th Cir. 1993) ("[W]e conclude that although the Constitution does not require a state to create an initiative procedure, if it creates such a procedure, the state cannot place restrictions on its use that violate the federal Constitution.").

Defendant SOS mischaracterizes *Schmitt v. Husted*, 341 F. Supp. 3d 784 (S.D. Ohio 2018), claiming that the plaintiffs, in that case, raised "identical claims," and that "the district court did not identify any First Amendment violations based on the same theories Plaintiffs advance here." (MTD at 1.) To the contrary, the *Schmitt* case considered the relatively narrow question of whether Ohio's ballot initiative process deprived Ohioans of their right to participate in the initiative process without adequate procedural due process. The court held that "Ohio's regulatory scheme unreasonably infringes on Plaintiffs' First Amendment rights by allowing an executive board to determine disputed legal and even constitutional issues, thereby potentially blocking initiatives from the ballot, and then denying rejected petitioners a right to review." *Schmitt v. Husted*, 341 F. Supp. 3d at 792, order reinstated, No. 2:18-CV-966, 2019 WL 517666 (S.D. Ohio Feb. 11 2019) (citing *Burdick v. Takushi*, 504 U.S. 428, 438 (1992)). In ordering permanent injunctive relief, the Court held that Ohio's ballot initiative process violated the due process clause because it did not provide an adequate review process. *Schmitt*, 2019 WL 517666, at *5 (S.D. Ohio Feb. 11, 2019). The significant constitutional questions raised in this case were not before the court in *Schmitt*.

---

admonition that "government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable," dovetails with the notion that all citizens, regardless of the content of their ideas, have the right to petition their government.

Response to Lucas County BOE Motion for Judgment on the Pleadings – 2

## BACKGROUND

Plaintiffs challenge Ohio election laws as those laws unconstitutionally constrain Ohioans' right to enact a county charter form of government, to amend municipal charters, and to enact municipal ordinances via initiative. As exemplified by Defendant SOS's discussion of decisions by both election officials and the Ohio Supreme Court, the violation of Plaintiffs' First Amendment and substantive due process rights has gone without redress. It is precisely for this reason that Plaintiffs seek relief in federal court.[3]

This case asks the Court to recognize that the portions of Ohio Rev. Code §§ 307.95, 307.95 (C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3) that authorize local boards of elections and the Secretary of State to scrutinize the subject matter and content of ballot initiatives violate Plaintiffs' First Amendment and substantive due process rights as secured by the U.S. Constitution and that pre-enactment review of proposed ballot measures by election officials and the judiciary violates the separation of powers doctrine.

While the Ohio Constitution sets parameters for exercising the right to direct democracy, nothing in the Ohio Constitution either requires or permits substantive, pre-enactment review of proposed measures. Legislation proposed by elected legislators is not reviewed by a special board or the judiciary prior to enactment. To do so would violate the separation of powers doctrine and amount to an impermissible advisory opinion. As Plaintiffs allege, there is no compelling reason

---

3  In *State ex rel. Espen v. Wood Cty. Bd. of Elections*, 2017-Ohio-8223, 154 Ohio St. 3d 1, 4, 110 N.E.3d 1222, 1226, the Ohio Supreme Court, in a plurality opinion, did find that the newly enacted O.R.C. 3501.38(M)(1) violated "the Constitution because 'the administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.'" *Id.* (citing *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 45, quoting *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph one of the syllabus). The *Espen* Court went on to say: "To the extent that R.C. 3501.38(M)(1)(a) authorizes and requires boards of elections to make substantive, preenactment legal evaluations, it violates the separation-of-powers doctrine and is unconstitutional." *State ex rel. Espen*, 2017-Ohio-8223, 154 Ohio St. 3d 1, 4, 110 N.E.3d 1222, 1226. Yet, as discussed below, Defendants continue to use Ohio's election laws to unlawfully prevent ballot access.

to permit such review when the people act as the legislative branch.

The background and facts set forth in Defendant SOS's brief illustrates the arbitrary nature of Ohio's ballot access scheme under which, according to Defendant, different pre-enactment review standards can apply to different types of initiatives without violating the First Amendment and substantive due process.

## I.     County Charters

The Ohio Constitution secures the people's right to initiate and enact a county charter. OHIO CONST., Art. X, § 3. With regard to the enactment of a county charter form of government, the offending statutory provisions permit boards of elections to review the substance of a county charter petition to determine if it falls within

> the scope of a county's authority to enact via initiative, including whether the petition conforms to the requirements set forth in Section 3 of Article X of the Ohio Constitution, including the exercise of only those powers that have vested in, and the performance of all duties imposed upon counties and county officers by law, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot.

O.R.C. § 3501.38(M)(1)(b).

If the petitioners attempting to advance a ballot initiative protest the board of elections' findings, Defendant Secretary of State then has an opportunity to itself engage in impermissible, pre-enactment content based review pursuant to O.R.C. § 307.95(C) by determining:

> the validity or invalidity of the petition, including whether the petition conforms to the requirements set forth in Section 3 of Article X and Section 3 of Article XVIII of the Ohio Constitution, including the exercise of only those powers that have vested in, and the performance of all duties imposed upon counties and county offices by law, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot.

O.R.C. § 307.95(C).

Similarly at issue are O.R.C. § 3501.11(K)(1) and (2) which, as a result of HB 463, permit boards of elections to engage in unlawful substantive review as to the "sufficiency and validity of petitions," and as to whether the measure is within the "scope of authority" and "initiative power."

(Compl. ¶ 60.)

Plaintiffs challenge these statutes as unconstitutional under the First Amendment and in violation of the right of local community self-government, and the separation of powers doctrine.

## II.    Municipal Charters

With regard to municipal charters, the Ohio Constitution secures citizens' rights to enact (Art XVIII, § 7), and amend a municipal charter (Art XVIII, § 9). Until 2018, petitioners advancing proposed municipal charter amendments faced the same type of substantive, unconstitutional review as proposed county charters. Prior to 2018, boards of elections had been engaging in the same type of unconstitutional "scope of authority" review as they do with regard to proposed county charters. This kept many proposed measures off of the ballot and forced Plaintiffs to engage in costly and time-consuming litigation. (Compl. ¶¶ 108-130, 142-155.) In 2018, the Ohio Supreme Court finally reversed course and made clear that boards of elections do not review a proposed municipal charter amendment before placing it on the ballot; the board simply fulfills a "ministerial" role in placing the proposal on the ballot once the relevant legislative authority issues the required ordinance. *State ex rel. Maxcy v. Saferin*, 2018-Ohio-4035, ¶ 19 (2018). A few months later, the Ohio Supreme Court reaffirmed and applied this holding in *State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, 2019-Ohio-201.[4]

---

4    The Court, however, left open the possibility of what would amount to unconstitutional, substantive review of proposed measures by the *municipal legislative body*, as opposed to the board of elections. *State ex rel. Abernathy v. Lucas Cty. Bd. of Elections*, 2019-Ohio-201, ¶ 8 ("This constitutional language vests the municipal legislative body with sole authority to determine whether the petition satisfies the legal requirements for submission to the voters. "Inasmuch as the Constitution requires the submission to be made by legislative authority, it follows that that authority need not make the submission unless satisfied of the sufficiency of the petitions and that all statutory requirements are fairly met." (citation and quotation omitted)). In other words, while an important advancement in the exercise of the right to initiative in the context of municipal charter amendments, there is still a stark need for the bright line rule prohibiting content-based pre-enactment review in any context, by anybody or any branch of government – whether executive, legislative or judicial – as a violation of the First Amendment and the right of local community self-government.

Yet, O.R.C. § 3501.11(K)(1) and (2) and O.R.C. § 3501.38(M)(1)(a), which give boards of elections unlawful authority with regard to initiative petitions, including those pertaining to municipal charter amendments, have not been repealed and remain part of Ohio election law. Plaintiffs' claims challenge the constitutionality of these statutes.

The lesson from *Maxcy* and *Abernathy* is that a bright line rule, as Plaintiffs' seek in this case, that would allow placement of proposed measures on the ballot as a ministerial act of election officials, is a realistic and workable remedy to what otherwise would be Defendants' continued constitutional violations.

## III.    Municipal Ordinances

Finally, OHIO CONST., Art. II, § 1f, secures the people's right to enact municipal ordinances via initiative. As Defendant SOS acknowledges, Ohio courts have allowed pre-enactment review by election officials and the judiciary to determine whether a proposed ordinance is considered legislative or administrative in nature. (MTD at 7.) Defendants point to OHIO CONST., art II, § 1f as the source of this limitation. Art. II, § 1f grants initiative power to enact ordinances as to "all questions which such municipalities may now or hereafter be *authorized by law to control by legislative action*[.]" OHIO CONST., Art. II, § 1f (emphasis added). (MTD at 7.) Despite the Ohio Supreme Court's plurality opinion in *Espen*, *see supra* fn. 4, Defendant SOS continues to rely on O.R.C. § 3501.38(M)(1)(a) (along with O.R.C. § 3501.11(K)) as authority for the *board of elections* to "determine" whether a proposed initiative "falls within the scope of a municipal political subdivision's authority to enact via initiative." (MTD at 7.) And, the Ohio Supreme Court itself, continues to allow election officials to engage in content-based, legal review of proposed ordinances to determine if they are within a municipality's legislative authority to enact. (MTD at 7.) As Plaintiffs allege, such review violates their constitutional rights.

## ARGUMENT

**I.      Plaintiffs Have Stated Claims for Violation of the First Amendment in Counts 1 - 4.**

In the first four counts of Plaintiffs' Complaint, Plaintiffs allege that "Defendants'

enforcement of Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1),

3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and of Ohio's ballot

access scheme, which allows content-based, substantive pre-enactment review of proposed ballot

measures by election officials and the judiciary," violates the First and Fourteenth Amendments,

facially and as-applied. (Compl. ¶¶ 235, 241, 247, 253.) Plaintiffs further allege that they are

severely burdened by Ohio's ballot access scheme, which allows content-based, substantive

pre-enactment review of proposed ballot measures by election officials and the judiciary. And that

such review constitutes unlawful content-based restriction and prior restraint that interferes with

core political speech and petition for redress of grievances, violates voters' fundamental right to

vote, and inhibits citizens from reforming or altering their current form of government. (Compl. ¶¶

231-254.)

**A.      Ohio's Unlawful Ballot Access Scheme Violates Plaintiffs' First Amendment Rights.**

Plaintiffs' case is premised upon the fact that the state initiative process provides a

uniquely provocative and effective method of spurring and hosting public debate on an issue of

importance to the proponents of the proposed initiative. *See City of Cuyahoga Falls*, 538 U.S. at

196. The process involved in proposing legislation by means of initiative involves core political

speech, such that in the area of citizen initiative lawmaking "the importance of First Amendment

protections is at its zenith" and the state's burden to justify restrictions on that process is

"well-nigh insurmountable." *Meyer v. Grant*, 486 U.S. 414, 424-25 (1988) (overturning state's

prohibition on using paid petition circulators).

Plaintiffs' allegations require the Court to consider: specific provisions of Ohio's election laws, application of those provisions by Ohio election officials, and the manner in which the Ohio judiciary interferes with the initiative process. Without a bright line rule against any pre-enactment review of a proposed initiative's content by municipal and state election officials or the judiciary, Ohio's process violates core political rights and yields unconstitutionally inconsistent results. (Compl., ¶ 11.)

The protected First Amendment speech burdened by Ohio's unlawful ballot access scheme is the right to campaign, and continue to advocate, for the proposed measure once it is cleared for placement on the ballot. As Defendant SOS concedes, "[p]rotected speech includes circulating petitions, and speaking in support of a proposed amendment." (MTD at 10.) Courts have long recognized that the circulation of initiative petitions involves the type of interactive communication that is protected. *See Meyer*, 486 U.S. at 424-25. Campaigning is also well-established political speech. *See Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 223 (1989) ("[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." (internal quotation marks omitted)); *Clingman v. Beaver*, 544 U.S. 581, 586 (2005) ("the right of citizens to band together in promoting among the electorate candidates who espouse their political views" is among the First Amendment's most pressing concerns (internal quotation marks omitted)).

Contrary to Defendant SOS' assertion, Plaintiffs as "supporter(s) of initiative measure(s) have been silenced." (MTD at p. 10). Once subject to Ohio's unlawful, content-based review of proposed measures, they are no longer able to educate people and "get out the vote" on the proposed measure. Plaintiffs' ability to campaign for the measure is silenced. Plaintiffs may no longer speak in support of voting on the measure in the upcoming election. The statutes thus have "the inevitable effect of reducing the total quantum of speech on a public issue" – an effect which

the Supreme Court in *Meyer* found to violate the First Amendment. *Meyer*, 486 U.S. at 423. Plaintiffs' activity is expressive activity related to a campaign. It is illogical to say that Defendants may terminate the exercise of Plaintiffs' free speech with regard to a ballot measure without implicating the First Amendment. Circulating petitions is protected speech. Campaigning is protected speech. It follows that continuing to campaign for a proposed ballot measure after signature gathering is also protected speech, and government action preventing that campaigning is subject to First Amendment review.

Further, as Plaintiffs allege, there is no compelling reason to restrict the right to campaign for a particular measure by allowing election laws to keep measures off the ballot. Challenges to the measure can be made post-enactment, just as when elected officials, as opposed to the people directly, are acting in a legislative capacity.

In claiming that the First Amendment simply does not apply, Defendant SOS ignores the fact that the Sixth Circuit has engaged in First Amendment analysis in reviewing other aspects of Ohio's ballot access restrictions. In *Comm. To Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443, 446-447 (6th Cir. 2018), the court considered the constitutionality of Ohio's single-subject rule. *See also Wirzburger v. Galvin*, 412 F.3d 271, 274-75 (1st Cir. 2005) (considering First Amendment challenge to provisions of the Massachusetts Constitution that prohibited ballot initiatives on two subjects).

In fact, the impact of Ohio's ballot access scheme on protected speech is analogous to the impact of filing deadlines that prevent candidates from getting on the ballot – restrictions found to be unconstitutional by the Sixth Circuit. *See Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 590 (6th Cir. 2006) ("As such, we find that the Ohio system for registering minor political parties imposes a severe burden on associational rights. In so ruling, we follow the great weight of authority that has distinguished between filing deadlines well in advance of the primary and

Response to Lucas County BOE Motion for Judgment on the Pleadings – 9

general elections and deadlines falling closer to the dates of those elections."); *see also Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (invalidating Ohio's early filing deadline for presidential candidates because they burdened newer and smaller parties). In *Libertarian Party of Ohio*, 462 F.3d at 582, the court considered plaintiff Libertarian Party of Ohio's argument that two Ohio election regulations "imposed an unconstitutional burden on its First and Fourteenth Amendment rights of free association, by effectively preventing it from gaining access to the general election ballot in the twelve months preceding a presidential election." The court agreed with the Libertarian Party, holding: "As the regulations are not narrowly tailored and do not advance a compelling state interest, Ohio's system for registering new political parties violates the Constitution." *Id.*; *see also id.* at 590 ("Put simply, the restrictions at issue in this case serve to prevent a minor political party from engaging in the most fundamental of political activities— recruiting supporters, selecting a candidate, and placing that candidate on the general election ballot in hopes of winning votes and ultimately, the right to govern. The evidence in the record indicates the negative impact these laws have had on minor parties and on political activity as a whole in Ohio. As such, we find that the Ohio system for registering minor political parties imposes a severe burden on associational rights."). Just as the court in *Libertarian Party* considered whether Ohio election laws pertaining to the filing requirements imposed upon minor political parties violated the First Amendment, the court in this case is presented with the question of whether Ohio election laws pertaining to content-based pre-enactment review violate the First Amendment.

Near the conclusion of the campaign, another type of protected speech is implicated – the freedom of expression enjoyed by those able to vote on the measure.[5] *See Nevada Comm'n on*

---

5 In *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 296–97 (6th Cir. 1993), plaintiffs' claimed that Michigan's ballot access procedures denied them the right to vote, arguing that the act of signing a petition to get an initiative placed on the ballot is entitled to the same protection as voting. That is not the argument Plaintiffs make in this case. Plaintiffs

*Ethics v. Carrigan*, 564 U.S. 117, 134 (2011) (Alito, J., concurring in part and concurring in the judgment) ("Voting has an expressive component in and of itself. The Court's strange understanding of the concept of speech is shown by its suggestion that the symbolic act of burning the American flag is speech but John Quincy Adams calling out "yea" on the Embargo Act was not."; "If an ordinary citizen casts a vote in a straw poll on an important proposal pending before a legislative body, that act indisputably constitutes a form of speech.").[6]

  Cases such as *Marijuana Policy Project v. United States*, 304 F.3d 82, 85 (D.C. Cir. 2002), are inapposite because Plaintiffs do not claim that they have an absolute right to legislate on a particular subject. *Marijuana Policy Project* addressed an entirely different issue – whether the legislature can withdraw a subject from the initiative process altogether – and has no bearing on this case. The *Marijuana Policy Project* case, unlike here, did not involve pre-enactment review

---

submit that the right to vote is implicated because Ohio's arbitrary and unconstitutional procedures employed to keep proposed measures off the ballot deprive all voting residents of the right to vote on the proposed measure. Defendants' interference with the fundamental right to vote is compounded by the fact that Defendants are keeping proposed measures off the ballot based on their content. Limiting what measures a voter can vote on implicates and interferes with the fundamental right to vote. Plaintiffs' position is further supported by their argument that there is a fundamental right to local community self-government that includes the right to direct democracy. Under this right, the fact that there is, for instance, "no fundamental constitutional right to call a local referendum," *Taxpayers United for Assessment Cuts*, 994 F.2d at 296–97, is not dispositive. The right to vote on measures proposed by the people flows from the right to direct democracy.

6 Defendant SOS cites the majority opinion in *Carrigan* for the proposition that "[t]he Supreme Court has wholesale 'rejected the notion that the First Amendment confers a right to use governmental mechanics to convey a message.'" (MTD at 10 (quoting *Carrigan*, 564 U.S. at 127).) Defendant SOS overstates the import of that decision. The majority opinion in Carrigan is distinguishable as the question before the Court was not whether an individual citizen's right to vote is protected speech. Nor did the Court consider whether campaigning for an initiative measure up until and including election day is protected speech. The Supreme Court addressed a law restricting a legislator's ability to vote on a particular measure. In holding that the restrictions upon the legislator's vote did not constitute a restriction on free speech the Court relied upon the fact that "[t]he legislative power thus committed is not personal to the legislator but belongs to the people; the legislator has no personal right to it." *Carrigan*, 564 U.S. at 126. The situation here is quite the opposite. It is individual citizens who have a personal interest in voting who are deprived of the right to vote on ballot measures by Ohio's unlawful ballot access scheme.

by state election officials or the judiciary that allows inquiry into the substance of proposed measures in order to make subjective determinations as to the qualification of measures for the ballot, thereby leading to arbitrary and unpredictable results. The same is true for *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1098 (10th Cir. 2006), and for the other cases Defendant SOS relies upon to argue that the First Amendment does not apply because Plaintiffs are not engaged in protected speech. (MTD at 10.) *Walker* challenged a supermajority requirement for initiatives. There, unlike here, the initiative was not kept from being placed on the ballot, it simply faced more of an uphill battle to pass.

For these reasons, the Court should reject Defendant SOS's argument that the First Amendment is not implicated.

**B.    Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3) are content-based restrictions on speech.**

Plaintiffs allege that Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and Ohio's ballot access scheme, which includes substantive pre-enactment judicial review, violates the First Amendment's prohibition against content-based restrictions on core political speech. Defendant SOS argues that these statutes are content-neutral, relying generally on states' leeway to protect the integrity of the initiative process and on *Comm. to Impose Term Limits on the Ohio Supreme Court v. Ohio Ballot Bd.*, 885 F.3d 443 (6th Cir. 2018), which held that Ohio's single subject rule was content-neutral because "[i]t applies to all initiative petitions, no matter the topic discussed or idea or message expressed." *Id.* at 447. (MTD at 12.)

Plaintiffs hereby incorporate their Opposition to Lucas BOE's Motion for Judgment on the Pleadings, which explains at length how the statutes at issue are content-based. (ECF No. 40 at 8-12.) As to Defendant SOS's reliance on *Ohio Ballot Board*, Plaintiffs reiterate that the reasoning

of that case does not apply here. First, the Ohio statutes at issue do not apply "irrespective of the substantive message the petition seeks to communicate." Rather, they are applied based on the petition's substantive message. Under Ohio's ballot access scheme, election officials are afforded the unlawful discretion to review the content of a proposed measure, and to further engage in a complex legal analysis as to whether that measure would be constitutional, if enacted, all in advance of an election, a vote, and (possible) passage of the measure. (*See, e.g.*, Compl., ¶ 137.) Second, in *Ohio Ballot Board*, the Court considered the narrow question of whether Ohio's single subject rule was constitutional. In doing so, the Court found that the single subject rule was content-neutral because it was cabined by a single, content-neutral, concrete standard – that is whether the initiative contained a single subject. *Id.* at 448. The single subject rule is in stark contrast to Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3) which invite election officials, and the judiciary, to engage in highly subjective, content-based inquiries of proposed measures.

For these reasons, the Court should deny Defendant SOS' motion to dismiss Counts 1 and 2.

**C. Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3) are prior restraints on speech.**

Plaintiffs allege that Ohio Rev. Code §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), 3501.39(A)(3), as authoritatively construed by the Ohio Supreme Court, and Ohio's ballot access scheme, which includes substantive pre-enactment judicial review, constitutes unlawful prior restraint in violation of the First Amendment. Defendant SOS argues that "[t]he challenged statutes do not act as a prior restraint on circulators or supporters, who retain their ability to advocate for ballot proposals." (MTD at 13.) Defendant SOS reasons that this is so because circulators and supporters can still talk about a proposed initiative even if it does not

appear on the ballot. (*Id.*) Such reasoning is wholly unpersuasive as it ignores the fact that Plaintiffs' free speech is being exercised as part of an election campaign. Halting that campaign at the unfettered discretion of election officials is a prior restraint on protected speech. Circulators and supporters can certainly still talk about certain concepts or ideas, but the very nature of their speech, as *political* speech, is stifled. The challenged statutes most certainly do affect Plaintiffs' "ability to communicate with other voters about proposed legislation," *Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993), since the challenged statutes rob initiatives of their "proposed" status. Once kept off the ballot by Ohio's unlawful ballot access scheme, the initiatives are no longer proposed initiatives and Plaintiffs', of course, can therefore no longer communicate about them *as proposed initiatives*.

Defendant SOS cites to *Aey v. Mahoning Cty. Bd. of Elections*, No. 4:08 CV 405, 2008 WL 554700, at *1 (N.D. Ohio Feb. 26, 2008) as rejecting the notion that the prior restraint doctrine applies in similar circumstances. (MTD at 14.) *Aey*, a non-published opinion, is inapposite. In *Aey*, the plaintiff sought a declaration that Ohio Revised Code § 311.01 is unconstitutional under the First and Fourteenth Amendments. *Id.* O.R.C. § 311.01 sets forth eligibility requirements for sheriff candidates. Important to the court's finding that the statute did not constitute unlawful prior restraint was the fact that "R.C 311.01 does not give discretionary authority to the Sheriff and clearly defines the threshold requirements that any candidate for office must satisfy." *Aey*, No. 4:08 CV 405, 2008 WL 554700, at *6. That is precisely the opposite of the circumstances here. The *Aey* court, in fact, recognized the proposition relied upon by Plaintiffs in this case – that "[i]f a statute gives licensing officials overbroad and unbridled discretion because it lacks these proper standards for applying the law, it is void," *id.* at *6 (citing *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988) – even though *Aey* ultimately found that the Ohio law at issue there, unlike the statutes at issue here, did not afford unbridled discretion.

Response to Lucas County BOE Motion for Judgment on the Pleadings – 14

With regard to the challenged statutes' impact on voters' ability to vote, Defendant SOS contends that there is no right to vote in support of a particular ballot measure. (MTD at 13.) Defendant advocates for an overly broad application of this general proposition. The impact of Ohio's ballot access scheme on the right to vote as alleged by Plaintiffs is a matter of first impression, and Plaintiffs submit that Sixth Circuit law does not preclude the recognition that Ohio's ballot access scheme unconstitutionally compromises the right to vote.[7]

Rather, Sixth Circuit case law supports Plaintiffs' position. In *Citizens for Legislative Choice v. Miller*, 144 F.3d 916 (6th Cir.1998), the Sixth Circuit considered whether a Michigan constitutional amendment imposing lifetime term limits on state legislators severely burdened voting rights. Plaintiffs sought to vote for representatives subject to the term limits, and contended that the constitutional amendment "violate[d] their First and Fourteenth Amendment rights to vote for their preferred legislative candidates." *Id.* at 919. While the Court ultimately upheld the constitutional amendment for reasons inapplicable to the Ohio statutes at issue here, the framework it applied in analyzing the amendment's impact on the plaintiffs' right to vote illustrates why Defendant's argument that Plaintiffs' claims should be dismissed outright is unsupported. In *Miller*, the court identified the following two principles – content-neutrality and alternative means of access – relevant to considering a law's impact on voting rights:

> First, and most importantly, a law severely burdens voting rights if it discriminates based on content instead of neutral factors. It is especially difficult for the state to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status. Second, a law severely burdens voting rights if the burdened voters have few alternate means of access to the ballot. In this situation, the law impermissibly restricts the availability of political opportunity.

*Id.* at 921 (citations and quotations omitted). *See Green Party of Tennessee v. Hargett*, 767 F.3d 533, 554 (6th Cir. 2014) ("Ballot-access laws invariably limit—to varying degrees—the right of

---

7  *See* footnote 6, *supra*.

political parties, candidates, and voters 'to associate in the electoral arena' and thereby 'enhance their political effectiveness as a group.'" (quoting *Anderson*, 460 U.S. at 794)).

Under these two principles, Ohio's ballot access scheme severely burdens Plaintiffs' voting rights. First, as set forth above, the election statutes are not content-neutral. By allowing measures to be kept off the ballot based on election officials' subjective determinations, they limit the political participation of the proposed initiatives' proponents. Second, initiative proponents have no other means to access the ballot, and therefore, the election laws impermissibly restrict the availability of political opportunity.

Plaintiffs further hereby incorporate their Opposition to Lucas BOE's Motion for Judgment on the Pleadings for a more in-depth discussion of how the statutes at issue are a prior restraint on protected speech. (ECF No. 40 at 12-14.) For these reasons, the Court should deny Defendant SOS's motion to dismiss Counts 3 and 4.

**D.    Ohio's Interests Do Not Justify the Severe Burden Imposed on Plaintiffs' Constitutional Rights.**

Defendant SOS' generalized argument that because states have a strong interest in simplifying the ballot, the statutes do not impose a burden on Plaintiffs' First Amendment Rights, is not well taken. (MTD at 14.) First, inquiry into whatever justifications the State may assert in defense of the election laws raises factual questions inappropriate for disposition at the motion to dismiss stage. Second, Defendant's generalized argument falls far short of meeting its burden. As Plaintiffs allege, Defendant's alleged interests are insufficient to satisfy either strict or intermediate scrutiny. *See Wirzburger v. Galvin*, 412 F.3d 271 (1st Cir. 2005) (applying intermediate scrutiny).

II.   **Plaintiffs Have Stated First Amendment Assembly and Petition Clause Constitutional Challenges.**

In Count 5, Plaintiffs allege that they "are severely burdened by Ohio's ballot access scheme, which prevents their ability to associate for political change by allowing executive and judicial officials to veto their duly-qualified proposed charters, charter amendments, and ordinance initiatives from appearing on the ballot." (Compl. ¶ 258.) Plaintiffs' Complaint contains detailed factual allegations explaining how this is so. (Compl. ¶¶ 108-230.)

Plaintiffs hereby incorporate their Opposition to Lucas BOE's Motion for Judgment on the Pleadings, which explains the basis for Plaintiffs' assembly and petition clause challenges. (ECF No. 40 at 14-16.) Defendant SOS does not address the substance of Count 5, but rather, reiterates its position that the First Amendment is not implicated, which position Plaintiffs refuted above.

For these reasons, the Court should deny Defendant SOS' motion to dismiss Count 5.

III.  **Plaintiffs Have Stated a Fourteenth Amendment Substantive Due Process Claim.**

Count 6 of Plaintiffs' Complaint alleges violation of the right of local community self-government pursuant to the substantive due process clause of the Fourteenth Amendment. (Compl. ¶¶ 261-270.) Plaintiffs hereby incorporate their Opposition to Lucas BOE's Motion for Judgment on the Pleadings, which explains the basis for Plaintiffs' substantive due process claim. (ECF No. 40 at p. 17-18.)

Defendant summarily dismisses Plaintiffs' claim based on the right of local community self-government without discussing the foundation for recognizing such a right set forth in Plaintiffs' Complaint, including the Declaration of Independence, the Ninth Amendment, the Ohio Constitution, and the Ohio Supreme Court case *Federal Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 118 N.E. 103 (1917). (*See* Compl. ¶¶ 88-94.) Indeed, the foundation on which the people created our system of written constitutions is that "*the people* have an original right to

establish, for their future government, such principles as, *in their opinion*, shall most conduce to their own happiness." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803) (emphasis added). Defendants' summary dismissal of Plaintiffs' allegations is insufficient to prevail on a motion to dismiss.

Plaintiffs allegations are similarly sufficient to support a due process claim on the grounds that Ohio's ballot access scheme shocks the conscience or is fundamentally unfair.  Plaintiffs have made sufficient allegations to support their substantive due process claim and Defendant's motion to dismiss as to Count 6 should be denied.

## IV.    Plaintiffs Have Stated a Claim under the Ninth Amendment.

Count 7 of Plaintiffs' Complaint is based on the Ninth Amendment. The Ninth Amendment of the United States Constitution provides that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Plaintiffs allege that "[a]mong the implicit liberties preserved for the people and protected from government intrusion by the Ninth Amendment is the inherent and fundamental right of local, community self-government, including the exercise of that right as expressed through the exercise of direct democracy." (Compl., ¶ 274.) *See also* Kurt T. Lash, *A Textual-Historical Theory of the Ninth Amendment*, 60 STAN. L. REV. 895, 935 (2008) ("Strict scrutiny is generally reserved for government actions that impinge upon protected rights. The text of the Ninth Amendment reminds us that maintaining an area of retained local autonomy is itself a right of the people.").

Plaintiffs recognize that courts have not generally recognized the Ninth Amendment as providing an independent cause of action. This case, however, is unique because, unlike in other cases where courts have not recognized a claim based on the Ninth Amendment, the right of local community self-government, as discussed above, is explicitly based on the retained rights by the people. As such, the Court should deny Defendant SOS's motion to dismiss Count 7.

Response to Lucas County BOE Motion for Judgment on the Pleadings – 18

**V.**     **Plaintiffs Have Stated a Claim for Violation of the Separation of Powers Doctrine Under Ohio Law.**

Count 8 is based on Defendants' violation of the separation of powers doctrine. Under the separation of powers doctrine as articulated in Ohio law, "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981). The judiciary has both the power and the solemn duty to determine the constitutionality and validity of acts by other branches of the government and to ensure that the boundaries between branches remain intact. *State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 462, 715 N.E.2d 1062 (1999).

Plaintiffs hereby incorporate their Opposition to Lucas BOE's Motion for Judgment on the Pleadings, which explains the basis for Plaintiffs' claim based on the separation of powers doctrine and for the reasons set forth therein should deny Defendant's motion to dismiss Count 8. (ECF No. 40 at 19-20.)

**CONCLUSION**

The Court should deny Defendant Secretary of State's Motion to Dismiss.

Respectfully submitted this Twentieth Day of May, 2019.

<u>**/s/ Terry J. Lodge**</u>
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com
lodgelaw@yahoo.com

*Attorney for Plaintiffs*

**Certificate of Memorandum Length**

Pursuant to Local Rule 7.1(f), this brief does not exceed 20 pages, as the Court recommended assigning this case to the standard track (ECF No. 12, at 3), and the case is still unassigned.

Dated: May 20, 2019.

**/s/ Terry J. Lodge**
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com
lodgelaw@yahoo.com

*Attorney for Plaintiffs*

**Certificate of Service**

I certify that I electronically filed this document with the Clerk of the Court for the United States District Court for the Northern District of Ohio by using the Court's CM/ECF system. The other parties are Filing Users and are served electronically with this document as of the date of filing by the Notice of Docket Activity.

Dated: May 20, 2019

**/s/ Terry J. Lodge**
Terry J. Lodge, Esq. (S.Ct. #0029271)
316 N. Michigan St., Suite 520
Toledo, OH 43604-5627
Phone (419) 205-7084
tjlodge50@yahoo.com

*Attorney for Plaintiffs*

Response to Lucas County BOE Motion for Judgment on the Pleadings – 21