PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SUSAN BEIERSDORFER, *et al.*, | ) | |
| | ) | CASE NO.  4:19CV260 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| FRANK LAROSE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OF OPINION AND** |
| | ) | **ORDER** [Resolving ECF Nos. 5, 22, 38] |

Defendants Richard F. Schoen, Brenda Hill, Joshua Hughes, and David Karmol, in their

official capacities as members of the Lucas County Board of Elections, filed a Motion for

Judgment on the Pleadings.  ECF No. 5.  Defendants David Betras, Mark Munroe, Robert

Wasko, and Tracey Winbush, in their official capacities as members of the Mahoning County

Board of Elections, filed a Motion to Dismiss.  ECF No. 22.  Defendant Frank LaRose, in his

official capacity as the Ohio Secretary of State, also filed a Motion to Dismiss.  ECF No. 38.

Plaintiffs opposed each motion, ECF Nos. 40, 45, 48, and all defendants replied, ECF Nos. 44,

51, 52.  Additionally, the Lucas County Board of Elections Defendants and Defendant LaRose

filed supplemental briefing in support of their motions.  ECF Nos. 65, 66.   Plaintiffs filed a

responsive brief.  ECF No. 67.  The Court heard oral argument as to the pending motions on

August 26, 2019.

For the following reasons, the Court grants the Mahoning County Board of Elections

Defendants' motion to dismiss for lack of standing.  ECF No. 22.  The Court also grants the

(4:19CV260)

motion for judgment on the pleadings filed by the Lucas County Board of Elections Defendants

and the motion to dismiss filed by Defendant Frank LaRose.  ECF Nos. 5, 38.

## I.  Background

### A.  Ohio Initiative Process

Ohio permits its citizens to pass laws through an initiative process.  This includes the

power to enact a county charter, Ohio Const. art. X, § 3, amend a municipal charter, *id.* art.

XVIII, § 7, and enact a municipal ordinance, *id.* art. II, § 1.

### 1.  County Charters

Electors of a county may commence the initiative process by filing a county charter

petition with the board of elections or the board of county commissioners.[1]  O.R.C. § 307.94.

Either way, the board of elections is responsible for reviewing the petition to "determine whether

the petition and the signatures on the petition meet the requirements of law[.]"  *Id.*; O.R.C. §

307.95(A).  "The petition shall be invalid if any portion of the petition is not within the initiative

power."  O.R.C. §§ 3501.11(K)(2), 3501.38(M)(1)(a), 3501.39(A)(3).  Upon making its

determination, the board of elections is required to submit a report to the board of county

commissioners.  O.R.C. §§ 307.94, 307.95(A).  If the petition does not meet the requirements of

law, the board of elections' report must provide "the reasons for invalidity."  O.R.C. §§ 307.94,

307.95(A).

---

[1] Though there are minor procedural differences between how petitions initially
filed with the board of commissioners and boards of elections are handled, these
differences are not at issue.

2

(4:19CV260)

The board of elections' findings of the validity or invalidity of a county charter petition may be challenged through a written protest, filed with the board of elections.[2] O.R.C. § 307.95(B).  The board of elections must deliver or mail to the secretary of state each protest received.  *Id.* at § 307.95(B)-(C).  The secretary of state must "determine . . . the validity or invalidity of the petition," including whether the petition is within the initiative power.  *Id.* at § 307.95(C).  "The determination by the secretary of state is final."  *Id.*

### 2.  Amendments to Municipal Charters

A proposed municipal charter amendment may be submitted to the electorate through the initiative process.  The amendment of a municipal charter is "a matter concerning the structure of a municipal government."  *State ex rel. Maxcy v. Saferin*, 122 N.E.3d 1165, 1168 (Ohio 2018).  If the proposed amendment has the requisite number of signatures, the legislative authority *must* pass an ordinance providing for the submission of the amendment to the electorate.  Ohio Const., art. XVIII, § 8.  Once the ordinance is passed, the board of elections is required to add the proposed charter amendment to the ballot.  *Maxcy*, 122 N.E.3d at 1171.

### 3.  Municipal Ordinances

Electors may enact municipal ordinances through the initiative process.  This power is limited to "all questions which such municipalities may now or hereafter be authorized by law to control by legislative action[.]"  Ohio Const., art. II, § 1f.

---

[2] Additionally, if a petition is initially filed with the board of elections, and the board of elections certifies that the petition is invalid, the petitioners' committee may request that the board of elections establish the validity or invalidity of the petition in an action before the court of common pleas in the county.  O.R.C. § 307.94.

3

(4:19CV260)

Like with county charter petitions, a board of elections must determine whether a

proposed initiative "falls within the scope of a municipal political subdivision's authority to act

via initiative" and whether "the petition satisfies the statutory prerequisites to place the issue on

the ballot.  O.R.C. § 3501.38(M)(1)(a).  "The petition shall be invalid if any portion of the

petition is not within the initiative power."  *Id.* at §§ 3501.11(K)(2), 3501.38(M)(1)(a),

3501.39(A)(3).

**B. Plaintiffs' Allegations**

**1. Against Mahoning County Board of Elections Defendants**

Plaintiffs Susan Beiersdorfer and Dario Hunter are Mahoning County residents and

members of the organization Frackfree Mahoning Valley ("Frackfree").  ECF No. 1 at PageID #:

27-28.  In 2017, Frackfree submitted a petition to amend the Youngstown Municipal Charter to

the Mahoning County Board of Elections.  *Id.* at PageID #: 28.  The Board refused to place the

proposed amendments on the election ballot, concluding that they exceeded Youngstown's

legislative power by creating new causes of action.  *Id.* at PageID #: 29.  In response, members of

Frackfree, including Beiersdorfer and Hunter, filed a writ of mandamus with the Ohio Supreme

Court.  *Id.* at PageID #: 28-29.

The Ohio Supreme Court denied the writ, finding that the proposed municipal charter

amendments were beyond the scope of the city's authority to enact by initiative and therefore

properly excluded from the ballot.  *State ex rel. Flak v. Betras*, 95 N.E.3d 329, 333 (Ohio 2017).[3]

---

[3] *Flak* was subsequently abrogated by *Maxcy*, 122 N.E.3d 1165.

4

(4:19CV260)

On April 24, 2018, Frackfree again attempted to place the Youngstown Drinking Water Protection Bill of Rights on the ballot.  ECF No. 1 at PageID #: 30.  After the Board refused, the petitioners again sought a writ of mandamus from the Ohio Supreme Court.  *Id.*  The Ohio Supreme Court granted the writ, and the charter amendment was placed on the ballot two weeks before the May 2018 election.  *Id.*; *see State ex rel. Khumprakob v. Mahoning Cty. Bd. of Elections*, 109 N.E.3d 1184, 1186 (Ohio 2018).  The measure, however, did not receive the requisite number of votes to pass.  ECF No. 1 at PageID #: 31.

Frackfree once more submitted the Youngstown Drinking Water Protection Bill of Right to the Board, this time for placement on the November 2018 ballot.  *Id.*  The Board certified the measure for placement on the ballot.  *Id.*

### 2.  Against Lucas County Board of Elections Defendants

Plaintiffs Markie Miller and Bryan Twitchell are Toledo residents and members of the organization Toledoans for Safe Water ("TSW").  ECF No. 1 at PageID #: 34-35.  On August 6, 2018, TSW submitted part-petitions with approximately 10,500 signatures in support of placement of the Lake Erie Bill of Rights ("Bill").  *Id.* at PageID #: 35.  The Bill is a municipal charter amendment with a "rights of nature" component providing a legal basis, including standing, for citizen intervention for the purpose of protecting the Lake Erie watershed.  *Id.*

The Lucas County Board of Elections notified the Clerk of Toledo City Council that the minimum number of votes necessary to qualify the Bill for the ballot had been surpassed.  *Id.* The Clerk of Toledo City Council accordingly instructed the Board to put the Bill on the November 6, 2018 ballot for a public vote.  *Id.*

5

(4:19CV260)

On August 28, 2018, the Board unanimously voted to reject the Bill from the ballot.  *Id.*
The Board determined that the Bill contained provisions beyond the scope of the City of
Toledo's power to enact.  *Id.*

Plaintiffs sought a writ of mandamus to compel the Board to place the Bill on the ballot,
claiming that the Board was prohibited from invalidating municipal initiatives from the ballot
based on substantive evaluations of legality.  *Id.* at PageID #: 36.  The Ohio Supreme Court
denied the writ, relying on its decision in *Flak*, 95 N.E.3d 329, in holding that elections boards
are authorized to "determine whether a ballot measure falls within the scope of the constitutional
power of referendum or initiative."  ECF No. 1 at PageID #: 36; *State ex rel. Twitchell v. Saferin*,
119 N.E.3d 365 (Ohio 2018).

Two weeks later, the Ohio Supreme Court abrogated *Flak*, holding that "boards of
elections have no authority to review the substance of a proposed municipal-charter
amendment[.]"  *Maxcy*, 122 N.E.3d at 1169.

### 3.  Against Defendant Frank LaRose

Under O.R.C. §§ 307.94 and 307.95(B), the secretary of state is responsible for resolving
protests challenging the validity or invalidity of county charter petitions.  Plaintiffs allege a
number of instances in which the acting secretary of state exercised this power.  First, the
secretary of state sustained a protest against a county charter petition submitted by the Meigs
County Home Rule Committee.  ECF No. 1 at PageID #: 39-40.  On two occasions, the secretary
of state also rejected protests of the Athens County Board of Elections' refusals to place a county
charter initiative on the ballot.  *Id.* at PageID #: 41-44.  On another three occasions, the secretary

6

(4:19CV260)

of state declined to certify county charter initiative petitions submitted by Sustainable Medina County.  *Id.* at PageID #: 45-48.  Lastly, the secretary of state denied a protest of the Portage County Board of Elections' refusal to add a proposed county charter petition to the ballot.  *Id.* at PageID #: 49-50.

## II.  Standard of Review

Fed. R. Civ. P. 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings."  A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6).  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  "To survive a [Rule 12(b)(6)] motion to dismiss, [the complaint] must allege 'enough facts to state a claim to relief that is plausible on its face.'"  *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court may dismiss a claim if it finds, on the face of the pleading, that "there is an insurmountable bar to relief indicating that the plaintiff does not have a claim."  *Ashiegbu v. Purviance*, 76 F. Supp.2d 824, 828 (S.D. Ohio 1998), *aff'd* 194 F.3d 1311 (6th Cir. 1999), *cert. denied*, 529 U.S. 1001 (2000).

"For purposes of a motion for judgment on the pleadings [or a motion to dismiss], all well-pleaded material allegations of the pleadings of the opposing party must be taken as true."

7

(4:19CV260)

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).  The Court "must construe the complaint in the light most favorable to [the] plaintiff[.]" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010) (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)).  In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Additionally, when a party files a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) in conjunction with other Rule 12 motions, the court generally considers the Rule 12(b)(1) motion first.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction[.]").  "It is the plaintiff's burden . . . to prove that this court has jurisdiction over [the plaintiff's] claim." *Kiser v. Reitz*, 765 F.3d 601, 607 (6th Cir. 2014).  "[W]here a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true." *Nichols v. Muskingum Coll.*, 318 F.3d 674, 677 (6th Cir. 2003).

### III.  Analysis

Defendants collectively contend that Plaintiffs' First Amendment claims, substantive due process claim, and Ninth Amendment claim all fail to state a plausible claim for relief.  Additionally, Defendants assert that Plaintiffs' state law separation of powers claim is barred

8

(4:19CV260)

under the Eleventh Amendment, and that, alternatively, the Court should decline to exercise

supplemental jurisdiction over the claim.

Separately, the Mahoning County Board of Elections Defendants argue, *inter alia*, that

Plaintiffs lack standing to bring their claims against them.

**A. Standing**

"A plaintiff must demonstrate that he has standing to pursue his claim in federal court by

showing three elements: (1) that he has suffered an 'injury in fact,' (2) that there is a 'causal

connection between the injury and the conduct complained of,' and (3) that it is 'likely, as

opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Kiser,*

*765 F.3d at 607* (quoting *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)*).  "Past

exposure to illegal conduct does not in itself show a present case or controversy" regarding

injunctive relief or declaratory relief "if unaccompanied by any continuing, present adverse

effects." *Lujan*, 504 U.S. at 564 (quotations omitted); *see Grendell v. Ohio Supreme Court*, 252

*F.3d 828, 832 (6th Cir. 2001)*.  Moreover, "when seeking declaratory and injunctive relief "to

enjoin the alleged illegal application of a state statute," a plaintiff must "show actual present

harm or a significant possibility of future harm." *Grendell*, 252 F.3d at 832-33 (quotation

omitted).

Plaintiffs allege that the Mahoning County Board of Elections unlawfully reviewed the

substance of Frackfree's proposed charter amendments on at least two occasions.  ECF No. 1 at

PageID #: 29-30.  On the third attempt, the Board certified the measure for placement on the

November 2018 ballot.  *Id.* at PageID #: 31.  The Board certified the measure without further

9

(4:19CV260)

litigation, in light of the Ohio Supreme Court's decision in *Maxcy*, 122 N.E.3d 1165.  ECF No. 1 at PageID #: 31.  Any injury arising from the Board's prior refusals to place Frackfree's proposed charter amendments on the ballot has therefore already been redressed.  These refusals, by themselves, do not confer a valid basis for standing.

 Plaintiffs additionally aver that they are entitled to prospective relief because Defendants engaged in "inconsistent and arbitrary content-based review" and "will continue to unlawfully interfere with Plaintiffs' constitutional rights."  *Id.* at PageID #: 31-32.  As a result, "any future initiatives are highly unlikely to be placed on the ballot, particularly without expending significant resources to defend them."  *Id.* at PageID #: 31.  They additionally claim that "it is highly uncertain whether a future initiative will or will not be placed on the ballot because there are no consistent rules or processes."  *Id.*  They allege that they require a court order providing them with declaratory and injunctive relief to avoid further harm.  *Id.* at PageID #: 31-32, 61-62.

Plaintiffs argue that "[b]y unlawfully keeping proposed measures off the ballot, Defendants' actions continue to have a severe deterrent effect upon Plaintiffs."  ECF No. 48 at PageID #: 463.  They aver that the costs necessarily incurred in order to "defend[] proposed ballot measures in court in an effort to get them on the ballot" have produced a chilling effect on their First Amendment rights.  *Id.*  They therefore maintain that "[t]he relief sought . . . will redress their [prospective] injuries because it will allow them to advance proposed measures free from unconstitutional constraints."  *Id.* at PageID #: 467.

This, however, is insufficient to establish the existence of continuing, present adverse effects necessary to confer standing as to Plaintiffs' claims for prospective relief against the

10

(4:19CV260)

Mahoning County Board of Elections Defendants. Following *Maxcy*, no one contests that, under Ohio law, a board of elections may not review the substance of a proposed municipal charter amendment. *See Maxcy*, 122 N.E.3d at 1171. There is no live case or controversy as it pertains to the constitutionality of substantive review of a proposed municipal charter amendment. And to the extent Plaintiffs' claims against the Mahoning County Board of Elections Defendants arise from the possibility of enforcement of Ohio's ballot initiative statutes permitting review of a county charter petition or proposed municipal ordinance, those claims are speculative. Plaintiffs do not allege that they ever filed, or intend to file, a county charter petition or a proposed municipal ordinance with the Mahoning County Board of Elections. ECF No. 1 at PageID #: 28.

Plaintiffs claim *Babbitt* stands for the proposition that a plaintiff has standing to challenge a state's election procedures, even if the plaintiff does not express an intent to use the challenged election procedures in the future. ECF No. 48 at PageID #: 464-65 (citing *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289 (1979)). In *Babbitt*, the Supreme Court held that the plaintiffs had standing to challenge the constitutionality of Arizona's statutory election procedures "on the ground that, by failing to account for seasonal employment peaks, it precluded the consummation of elections before most workers dispersed and hence frustrated the associational rights of agricultural employees." *Babbitt*, 442 U.S. at 294, 299. The plaintiffs had neither invoked the statutory election procedures in the past, nor expressed any intent to do so in the future. *Id.* The Supreme Court nonetheless found standing. The plaintiffs alleged that "agricultural workers are constitutionally entitled to select representatives to bargain with their employers over employment conditions." *Id.* The plaintiffs further averred that the employees'

11

(4:19CV260)

union desired to organize Arizona farmworkers and represent them in collective bargaining, having done so on behalf of California farmworkers in nearly 400 elections under election procedures allegedly "amenable to prompt and fair elections." *Id.* at 300. The plaintiffs, however, allegedly declined to pursue the procedures in Arizona because Arizona's statutory election procedures were futile. *Id.*

*Babbitt*, however, is inapposite, and Plaintiffs' reliance on *Babbitt* is unavailing. The *Babbitt* plaintiffs wished to organize together under representation of their choosing, but the state's statutory election procedures precluded them from doing so, whether or not the plaintiffs exercised the statutory election procedures. By preventing the plaintiffs from electing their desired representatives, the challenged statute was "sure to work the injury alleged," regardless of the plaintiffs' inaction. *See id.* The statutory election procedures necessarily had a continuing, present adverse effect on the plaintiffs' associational rights. Conversely, Plaintiffs, without alleging that they filed an unsuccessful initiative petition with the Mahoning County Board of Elections, or that they plan to file, intend to file, are likely to file, or wish to file an initiative petition in the future, plead no actual present harm or a significant possibility of future harm. Without more, Plaintiffs have not shown a particularized interest against the Mahoning County Board of Elections Defendants "that is distinguishable from the general interest" of every eligible voter. *See Hollingsworth v. Perry*, 570 U.S. 693, 707 (2013) (no standing for intervening petitioners, the official proponents of a law passed by initiative, in seeking to defend constitutionality of the law, when they had no "direct stake" in defending the enforcement).

12

(4:19CV260)

Without pleading a particularized harm sufficient to constitute an injury-in-fact,

Plaintiffs' claims against the Mahoning County Board of Elections Defendants amount to

"generalized grievance[s] . . . insufficient to confer standing." *See Hollingsworth*, 570 U.S. at

707. Accordingly, the Court dismisses Plaintiffs' claims against the Mahoning County Board of

Elections Defendants for lack of standing.[4]

### B. First Amendment

Plaintiffs assert facial and as-applied claims under the First Amendment against

Defendants for enforcing Ohio's ballot access scheme. Counts One and Two allege that Ohio's

pre-screening ballot procedure is a content-based restriction on core political speech and the right

to vote, for which "Defendants do not have any interests that could justify such burdens as to

survive strict scrutiny or any other standard of review . . . ." ECF No. 1 at PageID #: 52-53.

Counts Three and Four allege that Ohio's pre-screening ballot procedure "impose[s] severe

burdens and unreasonable restrictions on ballot access" and is therefore a prior restraint on core

political speech. *Id.* at PageID #: 53-55. Plaintiffs also bring, under Count Five, a First

Amendment claim alleging a violation of their right to assembly and to petition the government

for redress of grievances. *Id.* at PageID #: 55-56.

### 1. Prior Restraint (Counts Three and Four)

---

[4] In the alternative, the Court's analysis on the merits as to Plaintiffs' claims
against the Lucas County Board of Elections Defendants and Defendant LaRose apply
with equal force as to Plaintiffs' claims against the Mahoning County Board of Elections
Defendants. Accordingly, dismissal with prejudice of Plaintiffs' federal claims against
the Mahoning County Board of Elections Defendants is proper.

(4:19CV260)

"A prior restraint is any law forbidding certain communications when issued in advance of the time that such communications are to occur." *Schmitt v. LaRose*, --- F.3d --- , No. 19-3196, 2019 WL 3713886, at *4 (6th Cir. Aug. 7, 2019) (quotations omitted).  There is a heavy presumption against the constitutional validity of any system of prior restraints. *Freedman v. Maryland*, 380 U.S. 51, 57 (1965).  Content-neutral laws that do not directly target core expressive conduct, however, are generally not subject to *Freedman*'s heightened procedural requirements as a prior restraint on free expression. *See Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321-24 (2002); *Schmitt*, 2019 WL 3713886, at *4.

Plaintiffs offer nothing more than conclusory allegations that the ballot initiative statutes were applied based on content.  Because the ballot initiative regulations challenged by Plaintiffs apply, and were applied, "without regard to the subject matter or viewpoint of the initiative[,]" they are content-neutral restrictions. *See Schmitt*, 2019 WL 3713886, at *6 n.3.

Plaintiffs argue that, because "[p]roposed measures and the political campaigning around them are core political speech . . . [and] placing proposed measures on the ballot and advocating for them is expressive activity," restricting this activity would necessarily target core expressive conduct.  ECF No. 40 at PageID #: 376-77.  In ruling on the same statutory scheme as the one before the Court, however, the Sixth Circuit rejected an identical argument. *Schmitt*, 2019 WL 3713886, at *4 ("Ohio's ballot initiative laws, in contrast, do not directly restrict core expressive conduct; rather, the laws regulate the process by which initiative legislation is put before the electorate, which has, at most, a second-order effect on speech.").  A board of elections' authority to make structural decisions regulating the initiative process "inevitably affects the individual's

14

(4:19CV260)

right to speak about political issues and to associate with others for political ends." *Id.* (quotations omitted). But, these regulations are "a step removed from the communicative aspect of core political speech, and therefore do not involve the same risk of censorship inherent in prior-restraint cases." *Id.* (quotation omitted). Moreover, because "ballots serve primarily to elect candidates, not as forums for political expression . . . the heightened procedural requirements imposed on systems of prior restraint . . . are inappropriate in the context of ballot-initiative preclearance regulations." *Id.* at *5 (alterations in original).

Moreover, Ohio's ballot-initiative process does not empower the county boards of elections with unfettered discretion over determining whether to certify an initiative petition. *See Thomas*, 534 U.S. at 323 (requiring content-neutral restrictions to "contain adequate standards to guide the official's decision and render it subject to effective judicial review."). Ohio permits mandamus review of elections cases through the Ohio Supreme Court. The standard of review for ballot-initiative challenges is close to de novo, and does not require the reviewing court to accord any deference to the board of elections' interpretation of state election law. *Schmitt*, 2019 WL 3713886, at *6. And "[b]ecause of the necessity of a prompt disposition" of such cases, the Ohio Supreme Court provides an expedited pleading and briefing schedule for writs of mandamus relating to pending elections. Ohio S. Ct. Prac. R. 12.08.

Plaintiffs also contend *Schmitt*, in determining that the Ohio ballot-initiative process is not a prior restraint, did so "without addressing the repeated pronouncements of Ohio's highest

15

(4:19CV260)

court that . . . Ohio does not allow pre-election judicial review over substance[5] and the vote must

be allowed to take place." ECF No. 67 at PageID #: 607.  But *Schmitt* concluded Ohio's ballot-

initiative process is not a prior restraint because the statutes regulated the process by which

initiative legislation is put before the electorate, rather than directly restricting core expressive

conduct.  *Schmitt*, 2019 WL 3713886, at *4.  Whether Ohio law permitted pre-election review

has no bearing on whether the statutory scheme directly burdened core expressive conduct.

Because it does not, Plaintiffs' prior restraint claims fail.

Accordingly, the Court dismisses Plaintiffs' third and fourth causes of action for prior

restraint as to the Lucas County Board of Elections Defendants and Defendant LaRose.

## 2.  *Anderson-Burdick* (Counts One, Two, and Five)

Content-neutral restrictions, in the context of a constitutional challenge to a state's

election laws, are subject to the Supreme Court's "more flexible *Anderson-Burdick*

---

[5] Plaintiffs also fail to mention that, though the Ohio Supreme Court held that "boards of elections have no authority to review the substance of a proposed municipal-charter amendment[,]" it makes no such holding as to the review of county charter petition or municipal ordinance proposed by initiative.  *Maxcy*, 122 N.E.3d at 1169 ("[B]ecause R.C. 3501.11(K)(2) expressly applies to initiative petitions and the amendment of county charters but does not mention the amendment of municipal charters, its constitutionality should be addressed in a case involving a county charter or a municipal ordinance proposed by initiative.").

(4:19CV260)

framework[,]"[6] derived from the Supreme Court's holdings in *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992). *Comm. to Impose Term Limits on Ohio Supreme Court & to Preclude Special Legal Status for Members & Employees of Ohio Gen. Assembly v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018).

> The *Anderson-Burdick* three-step framework is applied in the following manner:
>
> The first, most critical step is to consider the severity of the restriction. Laws imposing severe burdens on plaintiffs' rights are subject to strict scrutiny, but lesser burdens . . . trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. Regulations that fall in the middle warrant a flexible analysis that weighs the state's interests and chosen means of pursuing them against the burden of the restriction. At the second step, we identify and evaluate the state's interests in and justifications for the regulation. The third step requires that we assess the legitimacy and strength of those interests and determine whether the restrictions are constitutional.

*Schmitt*, 2019 WL 3713886, at *5 (internal citations and quotation marks omitted).

"The hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Ky. v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016). Courts have found a severe burden when the plaintiffs have been categorically excluded from participation in the election process. *See, e.g.*, *Lubin v. Panish*, 415 U.S. 709, 719 (1974) ($701.60 filing fee for ballot-access petition excluded indigent candidates, and there was no reasonable alternative means of access); *Libertarian Party of Ohio v. Blackwell*, 462 F.3d 579, 582-83 (6th Cir. 2006) (Ohio law requiring minor political parties seeking access to the general election ballot to

---

[6] The Sixth Circuit approved the application of *Anderson-Burdick* at the motion-to-dismiss stage. *Comm. to Impose Term Limits on Ohio Supreme Court & to Preclude Special Legal Status for Members & Employees of Ohio Gen. Assembly v. Ohio Ballot Bd.*, 885 F.3d 443, 448 (6th Cir. 2018).

17

(4:19CV260)

participate in the March primary and, 120 days prior to the March primary, file a petition with signatures equal to one percent of the votes cast in the previous statewide election, effectively precluded minor parties from ballot access).

Plaintiffs, however, have not been burdened with exclusion or virtual exclusion from participating in the election process. Rather, they have been restricted from placing initiatives on the ballot that were determined by state officials to exceed the scope of legislative authority. They remain free to exercise the initiative power in compliance with Ohio's initiative ballot statutes. Such a restriction does not severely burden Plaintiffs' rights, under the First Amendment, to engage in political expression. *See Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) (holding no severe burden on First Amendment rights by restricting an individual's appearance on the ballot as a party's candidate). Nor can it be that Plaintiffs are categorically entitled to add initiatives to the ballot that plainly exceed the scope of the initiative power. *See Burdick*, 504 U.S. at 438 (rejecting plaintiff's claim that he is "entitled to cast and Hawaii required to count a 'protest vote' for Donald Duck . . . and that any impediment to this asserted 'right' is unconstitutional."); *see also id.* at 440 n.10 ("It seems to us that limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable. . . . The dissent's suggestion that voters are entitled to cast their ballots for unqualified candidates appears to be driven by the assumption that an election system that imposes any restraint on voter choice is unconstitutional. This is simply wrong."). And to the extent Plaintiffs argue the onus of expending time and effort to pursue relief from an erroneous

18

(4:19CV260)

determination of state law constitutes a severe burden, that argument fails.  *See Schmitt*, 2019 WL 3713886, at *6 (the cost of obtaining legal counsel to challenge a board of elections' decision not to certify an initiative through a writ of mandamus is a burden that is neither severe nor minimal).

Nonetheless, the burden is not so minimal as to warrant rational-basis review.  "[B]oards of elections wield the discretionary authority to decline to certify initiatives, and the burden thus falls on the aggrieved proponent" to obtain legal counsel and pursue relief through the courts.  *Id. at *6.*  As in *Schmitt*, the cost of challenging an adverse ruling through the courts would "disincentivize[] some ballot proponents from seeking to overturn the board's decision, thereby limiting ballot access."  *Id.*  Accordingly, the Court applies a "flexible analysis that weighs the state's interests and chosen means of pursuing them against the burden of the restriction."  *Id. at *5* (quoting *Grimes*, 835 F.3d at 574).

Plaintiffs do not argue whether Defendants have a strong interest in ensuring that only ballot-eligible initiatives go to the voters and maintaining voter confidence in the electoral process.  Nor can they.  "Keeping unauthorized issues off the ballot reduces the odds that an initiative is later held invalid on the ground that the voters exceeded their authority to enact it."  *Schmitt*, 2019 WL 3713886, at *7.  It also avoids overcrowding ballots with initiatives that constitute a "legal nullity."  *See id.*; *State ex rel. Walker v. Husted*, 43 N.E.3d 419, 423 (Ohio 2015).  As Plaintiffs concede, Defendants additionally have a strong interest in maintaining the integrity of its initiative process and ensuring the fair and honest operation of its elections.  *See*

19

(4:19CV260)

*id.* These interests, as they pertain to Defendants' application of Ohio's ballot initiative process, are both legitimate and substantial.

Instead, Plaintiffs contend that, because Defendants' interests are outweighed by the burden Ohio's ballot initiative laws have placed on their right to vote, the restrictions are unconstitutional. ECF No. 67 at PageID #: 611-12. But Plaintiffs fail to adequately explain how being prevented from voting on ballot measures exceeding the scope of state law is, itself, a substantial burden on First Amendment rights. And Defendants' significant interests in protecting the integrity and reliability of the initiative process, ensuring voter confidence in the electoral process, and avoiding the overcrowding of ballots justifies any such burden on Plaintiffs' First Amendment rights. *See Walker*, 43 N.E.3d at 423 ("[B]oards of elections have not only the discretion but an affirmative duty to keep . . . items [constituting a legal nullity] off the ballot.").

Plaintiffs assert that "the best way to ensure elections are run fairly and honestly and the best way to maintain the integrity of the initiative process is to adopt a bright line rule and clear prohibition against any pre-enactment review of a proposed initiative's content by election officials or the judiciary." ECF No. 67 at PageID #: 612. But the question in front of the Court is the constitutionality, rather than prudence, of Ohio's pre-enactment review of initiative petitions. In light of the significance of Defendants' interests in regulating the electoral process, and because Plaintiffs have not alleged a sufficiently significant burden on their First Amendment rights to overcome those interests, Plaintiffs' First Amendment challenge against

20

(4:19CV260)

Defendants fails.[7]  *See Schmitt*, 2019 WL 3713886, at *7 ("Although the State's chosen method

for screening ballot initiatives may not be the least restrictive means available, it is not

unreasonable given the significance of the interests it has in regulating elections.").

The Court accordingly dismisses Plaintiffs' first, second, and fifth causes of action as to

the Lucas County Board of Elections Defendants and Defendant LaRose.

**C. Substantive Due Process (Count Six)**

The Sixth Circuit has "identified substantive due-process claims as falling into two

categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the

conscience." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 861 (6th Cir. 2012) (quoting

*Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)) (quotation

marks omitted).

Plaintiffs frame their substantive due process claim as arising from their "inherent and

fundamental right of local, community self-government[.]"[8]  ECF No. 1 at PageID #: 56-58.  Yet

Plaintiffs fail to point to a single case in which a court has recognized local, community self-

government as a fundamental right under the United States Constitution.  Rather, "[n]othing in

---

[7] Because Plaintiffs' facial challenges are not meaningfully different from their as-applied challenges, the Court's analysis of Plaintiffs' as-applied First Amendment claims is also dispositive of Plaintiffs' facial challenges.

[8] To the extent Plaintiffs' substantive due process claims are duplicative of their First Amendment claims, they fail.  *See Albright v. Oliver*, 510 U.S. 266, 286 (1994) ("[A] cause of action cannot be based on substantive due process where a more specific constitutional provision is applicable.").

21

(4:19CV260)

the Constitution guarantees direct democracy." *Jones v. Markiewicz-Qualkinbush*, 892 F.3d 935, 937 (6th Cir. 2018). "Counties, cities, and towns are municipal corporations created by the authority of the [state] legislature," and derive their all of their power from state law. *Town of Mt. Pleasant v. Beckwith*, 100 U.S. 514, 524 (1879). Accordingly, the right to local, community self-government is governed by state law. It is not a fundamental right under the United States Constitution. *See John Doe No. 1 v. Reed*, 561 U.S. 186, 212 (2010) (Sotomayor, J., concurring) (noting that it is "instead up to the people of each State . . . to decide whether and how to permit legislation" through "mechanisms of direct democracy" such as the initiative power and referendum power); *see also Taxpayers United for Assessment Cuts v. Austin*, 994 F.2d 291, 297 (6th Cir. 1993) ("[T]he right to initiate legislation is a wholly state-created right[.]").

Additionally, Plaintiffs claim that Defendants' conduct is "conscience shocking insofar as Defendants repeatedly and arbitrarily oppress the exercise of direct democracy." ECF No. 1 at PageID #: 59. "Shock the conscience" claims generally do not apply to cases that do not involve physical force. *See, e.g.*, *Cassady v. Tackett*, 938 F.2d 693, 698 (6th Cir. 1991); *Braley v. City of Pontiac*, 906 F.2d 220, 226 (6th Cir. 1990). Nor do Plaintiffs explain how Defendants' application of Ohio's pre-screening ballot initiative procedure is the rare case that could succeed under a "shock-the-conscience" theory.

Accordingly, the Court dismisses Plaintiffs' sixth cause of action as to the Lucas County Board of Elections Defendants and Defendant LaRose.

### D.  Ninth Amendment (Count Seven)

22

(4:19CV260)

The Ninth Amendment "does not confer substantive rights in addition to those conferred by . . . governing law."  *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991).  Plaintiffs concede this, but contend that their claim is unique because it relies on the right of local, community self-government.  ECF No. 40 at PageID #: 383; ECF No. 45 at PageID #: 445.  The right to local, community self-government, however, is not a right guaranteed under the United States Constitution.  Plaintiffs have not cited any authority to the contrary.  Accordingly, the Court dismisses Plaintiffs' seventh cause of action as to the Lucas County Board of Elections Defendants and Defendant LaRose.

### E.  Separation of Powers under Ohio Law (Count Eight)

Actions brought against the State or an "arm of the state" are subject to the doctrine of sovereign immunity under the Eleventh Amendment.  *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005).  The "arm of the state" includes state officials in their official capacity.  *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007).  The county boards of elections and their members are also arms of the state.  *State ex rel. Semik v. Cuyahoga Cty. Bd. of Elections*, 617 N.E.2d 1120, 1122 (Ohio 1993) ("The board of elections . . . is strictly a board and an arm of the state government.").  "The federal courts are simply not open to such state law challenges to official state action, absent explicit state waiver of the federal court immunity found in the Eleventh Amendment."  *Farris*, 503 F.3d at 521.

Plaintiffs' eighth cause of action is based on the separation of powers doctrine under Ohio law.  ECF No. 1 at PageID #: 60.  They claim, without support, that "the Eleventh Amendment's

(4:19CV260)

rationale for barring a federal court from considering state law claims does not apply."  ECF No. 40 at PageID #: 384.  Nor do they provide any authority stating that Ohio has explicitly waived federal court immunity against claims brought under the separation of powers doctrine.[9]

Because the Lucas County Board of Elections Defendants and Defendant LaRose are immune, the Court dismisses Plaintiffs' eighth cause of action without prejudice.[10]

### IV.  Conclusion

For the foregoing reasons, the Court grants the Lucas County Board of Elections Defendants' motion for judgment on the pleadings (ECF No. 5), the Mahoning County Board of Elections Defendants' motion to dismiss (ECF No. 22), and Defendant LaRose's motion to dismiss (ECF No. 38).


IT IS SO ORDERED.



  August 30, 2019                      /s/ Benita Y. Pearson
Date                                 Benita Y. Pearson
                                     United States District Judge

---

[9] Eleventh Amendment immunity does not attach to suits "filed against a state official for purely injunctive relief enjoining the official from violating federal law." *Ernst*, 427 F.3d at 358-59 (citing *Ex parte Young*, 209 U.S. 123, 155-56 (1908)). Plaintiffs' eighth cause of action, however, arises under Ohio law, not federal law.  The *Ex Parte Young* exception to immunity does not apply to Plaintiffs' separation of powers claim.

[10] A dismissal on the basis of Eleventh Amendment sovereign immunity is a dismissal for lack of jurisdiction, and "dismissals for lack of jurisdiction should generally be made without prejudice."  *Ernst*, 427 F.3d at 366.