IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
Eastern Division

| | |
|---|---|
| **Susan Beiersdorfer** *et al.*, | No. 4:19-cv-00260 |
| Plaintiffs, | The Honorable Benita Y. Pearson |
| v. | |
| **Frank LaRose** *et al*, | |
| Defendants. | **Plaintiffs' Response to Defendant Portage County Board of Elections' Motion to Dismiss** |

**PLAINTIFFS' RESPONSE TO DEFENDANT PORTAGE COUNTY BOARD OF ELECTIONS' MOTION TO DISMISS**

Defendant members of the Portage County Board of Elections ("Portage BOE") moved this Court to dismiss the Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(B)(1) and Fed. R. Civ. P. 12 (B)(6) for failure to state a claim upon which relief can be granted. The Plaintiffs' respectfully request that this Court deny the Portage BOE's motion to dismiss.

I.   **Standard of Review**

"To survive a [Rule 12(b)(6)] motion to dismiss, [the complaint] must allege 'enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.,* 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

1

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "For purposes of a motion for judgment on the pleadings [or a motion to dismiss], all well-pleaded material allegations of the pleadings of the opposing party must be taken as true." *Wurzelbacher v. Jones-Kelley,* 675 F.3d 580, 583 (6th Cir. 2012) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)). The Court "must construe the complaint in the light most favorable to [the] plaintiff[.]" *Albrecht v. Treon,* 617 F.3d 890, 893 (6th Cir. 2010) (quoting *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)).

The Plaintiffs have accused the Portage BOE of engaging in unconstitutional content-based review and voting to keep the proposal off the ballot because the governmental structure ostensibly did not provide for a county executive position. Complaint, ¶ 222. The Plaintiffs have also accused the Portage BOE of manufacturing this requirement that proposed county charters must provide for a county executive position. *Id.* The plaintiffs allege that the Portage BOE's actions are a violation of the First, Ninth, and Fourteenth Amendments of the U.S. Constitution as well the separation of powers doctrine as articulated by Ohio law. If the Complaint is construed in the light most favorable to the Plaintiffs and the Plaintiffs' factual pleadings are taken as true, then the Plaintiffs' claims against the Portage BOE must survive the Portage BOE's Rule 12(b)(6) motion to dismiss.

> II. ***Schmitt* is inapposite because the *Schmitt* plaintiffs' prior restraint arguments were limited to the ballot-initiative statutes while the Plaintiffs here allege that the whole ballot access scheme – which includes the statutes, the Portage BOE's enforcement of those statutes, and the Ohio Supreme Court's inconsistent and contradictory decisions – amount to prior restraint.**

The Portage BOE refers to this Court's August 30th Opinion and Order granting Mahoning County Board of Elections Defendants' motion to dismiss for lack of standing,

granting the Lucas County Board of Elections Defendants motion for judgment on the pleadings, and granting Defendant Frank LaRose's motion to dismiss. The BOE then argues that it has a significant interest in regulating the electoral process, that the Plaintiffs have not alleged a sufficiently significant burden on their First Amendment right to overcome these interests, and, because of this, that the Plaintiffs' First Amendment challenge against the BOE fails. Portage BOE Motion to Dismiss, pg. 8.

The Portage BOE's argument, and this Court's August 30th Opinion and Order, rely on *Schmitt v. LaRose,* 963 F.3d 628 (6th Cir. 2019). This reliance is misplaced because the allegations advanced by the plaintiffs in *Schmitt* and the allegations the Plaintiffs make here are fundamentally different. In *Schmitt*, the plaintiffs asserted "that because the ballot-initiative statutes delegate authority to boards of elections to review proposed initiatives prior to the election, the statutes amount to a prior restraint, and consistent with *Freedman,* Ohio must provide *de novo* judicial review of a board's decisions." *Id.* at pg. 7.

It is true that the Sixth Circuit in *Schmitt* ruled "that the ballot initiative process here is not a prior restraint." But the *Schmitt* plaintiffs' arguments were confined to the ballot-initiative statutes and the need for *de novo* judicial review of a board's decision. So, in *Schmitt,* as the Sixth Circuit made clear, the plaintiffs "never challenged the legitimacy of the legislative-administrative distinction or the state's right to vest in county boards of elections the authority to apply that distinction." *Schmitt,* p. 9. This is why the Sixth Circuit, in *Schmitt*, only ruled on the laws themselves. For example, the Sixth Circuit wrote, "Ohio's ballot-initiative laws…do not directly restrict core expressive conduct; rather, the laws regulate the process by which initiative legislation is put before the electorate, which has, at most, a second order effect on protected speech." *Id.*, pg. 8.

In this case, the Plaintiffs argue much more. They have argued that Defendants' enforcement of O.R.C. §§ 307.95, 307.95(C), 3501.11(K)(1) and (2), 3501.38(M)(1), and 3501.39(A)(3) and Ohio's ballot access scheme, which allows content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary violates the First and Fourteenth Amendments, facially and as applied. Plaintiffs further maintain that enforcing content-based restrictions and prior restraint also violate the First Amendment Assembly and Petition clauses. See Complaint, Counts 1-5.

In contrast, the *Schmitt* plaintiffs only asserted a right to *de novo* review of a board's decision. Here, the Plaintiffs seek a bright-line rule against content-based, substantive pre-enactment review of proposed ballot measures by election officials and the judiciary because this practice violates the First and Fourteenth Amendments. In other words, they challenge the legislative-administrative distinction and the state's right to vest in county boards of elections the authority to apply that distinction.

The Plaintiffs in response to the Lucas County Board of Elections' and the Secretary of State's supplemental briefs on *Schmitt* argued that the Sixth Circuit did not consider the repeated pronouncements of the Supreme Court of Ohio that Ohio does not allow pre-enactment substantive review of proposed charter amendments. This Court responded: "But *Schmitt* concluded Ohio's ballot-initiative process is not a prior restraint because the statutes regulated the process by which initiative legislation is put before the electorate, rather than directly restricting core expressive conduct. Whether Ohio law permitted pre-election review has no bearing on whether the statutory scheme directly burdened core expressive conduct." Opinion and Order, p. 16.

By restricting the question to whether the statutes, by themselves, only regulate the process by which initiative legislation is put before the electorate instead of directly infringing on core expressive conduct, this Court, like the *Schmitt* court, misses the point. A statutory scheme includes both the actual statutes, the official interpretation of those statues provided by the courts, and the way those statutes are applied.

The Ohio Supreme Court, the highest authority on questions of constitutionality under the Ohio Constitution, has repeatedly pronounced that, even if the thrust of an initiative would be unlawful if passed, Ohio does not allow pre-election judicial review over substance and the vote must be allowed to take place. As recently as January 23, 2019, the Supreme Court of Ohio clearly stated "a board of elections has no legal authority to review the substance of a proposed charter amendment and has no discretion to block the measure from the ballot based on an assessment of its suitability." *State ex. rel. Abernathy v. Lucas County Board of Elections*, 2019-Ohio 201, No. 2018-1824, ¶ 7. And, "A board of elections has no discretion to keep a proposed charter amendment off the ballot because in placing a proposed amendment to a municipal charter on the ballot, the board of elections has nothing but a ministerial role under the Constitution." (internal quotations and citation removed) *Id.* at ¶ 9.

On October 4, 2018, the Supreme Court of Ohio held "…boards of election have no authority to review the substance of a proposed municipal charter amendment." *State ex rel. Maxcy v. Saferin*, 2018-Ohio-4035, No. 2018-1242, ¶ 13. And, in 2015, the Supreme Court of Ohio ruled, "An unconstitutional proposal may still be a proper item for referendum or initiative. If passed the measure becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction. Until, then the people's power of referendum remains paramount." *State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, ¶ 16.

5

So, when the Portage BOE voted to keep the Plaintiffs' proposal off the ballot because the governmental structure ostensibly did not provide for a county executive position, the Portage BOE engaged in a review of the substance of the proposed charter amendment and assessed the proposed charter amendment's suitability – two things the Ohio Supreme Court has said boards of elections cannot do.

Then, in *State ex rel. Coover v. Husted,* 148 Ohio St.3d 332, 70 N.E.3d 587, 2016-Ohio-5794 (2016), the Portage County Community Rights Group, including Plaintiff Fisher, sought relief in mandamus in the Ohio Supreme Court. The Ohio Supreme Court itself engaged in unconstitutional content-based review and affirmed the unlawful principle that Defendants elections officials may discretionarily determine whether a proposed county charter is invalid by reviewing its substance and concluding that it does not propose an acceptable form of government.

The *Schmitt* court noted, "[t]he fundamental objection to systems of prior restraint is that they create a risk of government censorship of expressive activity." The Plaintiffs have alleged that Ohio's ballot scheme – which includes the pertinent statutes, the Portage BOE's unconstitutional enforcement of the pertinent statutes, and the Ohio Supreme Court's inconsistent and contradictory rulings interpreting those statutes – amounts to arbitrary content-based and illegal review of the proposed charters and rises to the level of prior restraint.

**Plaintiffs' First Amendment Challenges Succeed Under the *Anderson-Burdick* Framework**

Even if this Court disagrees that Ohio's statutes, the Portage County BOE's employment of pre-enactment substantive and content-based review to keep the Plaintiffs' initiative off the ballot, and the Ohio Supreme Court's use of unconstitutional content-based review do not amount to prior restraint, the Plaintiffs' First Amendment challenges succeed under the three-

6

step *Anderson-Burdick* framework. The Sixth Circuit described the three *Anderson-Burdick* steps:

"The first, most critical step is to consider the severity of the restriction. Laws imposing severe burdens on plaintiffs' rights are subject to strict scrutiny, but lesser burdens trigger… less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions. Regulations that fall in the middle warrant a flexible analysis that weighs the state's interests and chosen means of pursuing them against the burden of the restriction. At the second step we identify and evaluate the state's interests in and justifications for the regulation. The third step requires that we assess the legitimacy and strength of those interests and determine whether the restrictions are constitutional." (citations and internal quotation marks omitted). *Schmitt*, pg. 9

The Sixth Circuit has stated that "[t]he hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Libertarian Party of Ky. v. Grimes*, 835 F.3d, 574 (6th Cir. 2016). Here, the Portage County BOE excluded the Plaintiffs' initiative from the ballot and the Plaintiffs have provided numerous examples of how other Defendants have excluded proposed charter amendments from the ballots in the Complaint.

From this extensive laundry list of exclusions from ballots, the Plaintiffs highlight a few examples. Plaintiffs demonstrated how Defendants have engaged in unlawful reviews of the substance of proposed charter amendments and used these reviews to exclude proposed initiatives from the ballot. Complaint, ¶¶108- 230. The Plaintiffs also explained how pre-enactment substantive review makes it extremely difficult, and often impossible, to place proposed measures that are politically controversial on the ballot, "thereby eliminating all campaigning regarding the measure from the time of Defendants' unlawful interference in the process up to election day" and "depriving voters of the opportunity to vote on such measures." Complaint, ¶¶ 80-81. And, they have shown that content-based, substantive pre-enactment review of proposed ballot measures interferes with core political speech and petition for redress

7

of grievances, violates voters' fundamental right to vote, and inhibits citizens from reforming or altering their current form of government. Complaint, ¶ 239.

Notably, in its Opinion and Order, this Court cited the Sixth Circuit's statement that the "hallmark of a severe burden is exclusion or virtual exclusion from the ballot." But this Court then inexplicably misquoted that statement and ruled: "Plaintiffs, however, have not been burdened with exclusion or virtual exclusion from participating in the election process. Rather, they have been restricted from placing initiatives on the ballot that were determined by state officials to exceed the scope of legislative authority." The issue is not whether Plaintiffs have been excluded from participating in the election process. The Sixth Circuit's statement is quite clear: the "hallmark of a severe burden is exclusion or virtual exclusion *from the ballot*. (emphasis added)"

Even if this Court does not find that the injury claimed by the Plaintiffs is severe enough to subject the Ohio ballot access scheme to strict scrutiny, the second and third *Anderson-Burdick* steps direct courts to apply a "flexible analysis that weighs the state's interests and chosen means of pursuing them against the burden of the restriction." *Schmitt,* pg. 9. If this Court does not apply strict scrutiny, the burden of the restrictions claimed by the Plaintiffs outweighs the State's interests and chosen means of pursuing them.

The Sixth Circuit has ruled that a state has a strong interest in "ensuring that its elections are run fairly and honestly," as well as in "maintaining the integrity of its initiative process." *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291, 297 (6th Cir. 1993). "Ensuring that its elections are run fairly and honestly" must mean that states, their secretaries, and their boards of elections cannot consistently refuse to place politically controversial initiatives on the ballot for the reason that their secretaries and boards of elections object to the substance of the

initiatives. Similarly, while the Plaintiffs take no issue with the Secretary's and boards of elections' need to keep frivolous and fraudulent candidacies off the ballot, "maintaining the integrity of its initiative process" means that, when in doubt, the people should be allowed to vote. There's no better way to determine frivolity or fraud than through a direct vote.

The Plaintiffs also assert, once more, that the best way to ensure elections are run fairly and honestly and the best way to maintain the integrity of the initiative process is to adopt a bright line rule and clear prohibition against any pre-enactment review of a proposed initiative's content by election officials or the judiciary. If this bright line rule were adopted, the voice of the voters would be heard. And, if the voters happened to enact an unconstitutional initiative, it would guarantee that those most qualified to ascertain constitutionality and legal substance – the courts (and not the Secretary of State or the Secretary's boards of elections, which are overwhelmingly staffed by non-lawyers) – would determine the lawfulness of enacted initiatives.

In its Opinion and Order, this Court held: "But the question in front of the Court is the constitutionality, rather than prudence, of Ohio's pre-enactment review of initiative petitions." But Plaintiffs' arguments for a bright-line rule against any pre-enactment review of a proposed initiative's content arise from the *Anderson-Burdick* context, where this Court is supposed to assess the legitimacy and strength of the state's interests in and justifications for the regulations currently in place. The State's interests in and justifications for regulations that allow pre-enactment review are weak when considering the ease with which a bright-line rule could be implemented and the favorable and fair results this bright-line rule would lend to Ohio's ballot access scheme.

### III. The Declaration of Independence; Article I, Section 2 of the Ohio Constitution; and *Federal Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 118 N.E. 103

**(1917) all recognize an inherent, fundamental right of local, community self-government.**

The Portage BOE requests that Plaintiffs' Count 6 be dismissed for failure to state a claim upon which relief may be granted. In making this argument, the Portage BOE notes that this Court observed that no case recognizing an inherent and fundamental right of local, community self-government was argued, and that "[n]othing in the Constitution guarantees direct democracy." Portage BOE, MTD, pgs. 8-9.

To the contrary, the Plaintiffs allege in the Complaint that the rights protected by the Substantive Due Process clause include unenumerated rights which are so rooted in the traditions and conscience of our people as to be ranked as fundamental. Complaint, ¶¶ 262-63. And, the right of local, community self-government is so rooted in the traditions and conscience of our people as to be ranked as fundamental.

To support this argument, the Plaintiffs assert: "The American Declaration of Independence secures the right of local, community self-government by recognizing four principles of law essential to American governments: first, that people possess certain fundamental civil and political rights; second, that governments are created to secure those rights; third, that governments owe their existence to, and derive their power exclusively from, the community of people which creates and empowers them; and fourth, that if government becomes destructive of those ends, the people have both a right and a duty to alter or abolish that system of government, and replace it with a system of government that recognizes self-governing authority and that protects the people's civil and political rights." Complaint, ¶ 89.

The Ohio Constitution reflects the spirit of the American Declaration of Independence at Article I, Section 2 which provides that political power is inherent in the people and that the people have the right to alter, reform, or abolish the same, whenever they may deem it necessary.

10

The right of local, community self-government was also recognized by the Ohio Supreme Court in *Federal Gas & Fuel Co. v. City of Columbus*, 96 Ohio St. 530, 118 N.E. 103 (1917), where it explained:

"The historical fact is that we had a hundred and more municipalities in Ohio already in existence at the time of the adoption of our first constitution, in 1802 . . . . All were then exercising local self-government. The constitutional fathers did not even mention municipalities or cities in the first constitution, and in the second constitution [of 1851] granted to the general assembly certain power to restrict, from all of which it would seem a mere legal and constitutional axiom that they never granted, nor intended to grant, to the general assembly of Ohio the general guardianship of all municipalities. If all political power is inherent in the people, as written in our constitution, for the government of the state, it would seem at least of equal importance that all political power should be inherent in the people for the government of our cities and villages and so it seemed to men like Thurman, Ranney, Cooley and Campbell, than whom there have been few greater in American jurisprudence. I prefer to follow their course of reasoning, based upon historical fact and political principles, rather than the mere dictums and dogmas of decisions holding that municipal government is government by the general assembly. *Id*. at 534-35.

*Federal Gas* established local, community self-government in Ohio as a fundamental political right of people to govern their local communities.

IV.   **Construed in a light most favorable to the Plaintiffs, the Plaintiffs' Ninth Amendment Claim alleges actions that shock the conscience and should survive the Portage BOE's Rule 12(B)(6) Motion to Dismiss.**

The Portage BOE also seeks dismissal of Plaintiffs' Ninth Amendment Claim because this Court noted that "[t]he Ninth Amendment 'does not confer substantive rights in addition to those conferred by…governing law" and that this Court has previously determined that an asserted "right to local, community self government is not a right guaranteed under the United States Constitution." Opinion and Order, pg. 23.

This Court explained that substantive due-process claims fall into two categories: "(1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience." Opinion and Order, pg. 21, quoting *EJS Properties, LLC v. City of Toledo,* 698 F.3d 845, 861 (6th

11

Cir. 2012). In ruling that the Plaintiffs' sixth cause of action as to Defendants Lucas County Board of Elections and LaRose should be dismissed because the Plaintiffs failed to establish substantive due process claims under *EJS Properties*, this Court ignored the Ohio Supreme Court's constitutional guarantee of local self-government made in *Federal Gas*.

This Court further ignored the Plaintiffs' allegations that the arbitrary content-based review of proposed ballot measures shocks the conscience because it allows one county's BOE to place a proposed measure on the ballot while another county's BOE can prevent ballot access for a same or similar measure. Plaintiffs also allege that the Defendants' arbitrary content-based review of proposed ballot measures shocks the conscience because it empowers Defendants to block initiatives from the ballot in the same jurisdiction in one year for one reason, and in a subsequent year for an opposite and even contradictory reason. Complaint, ¶ 277-78. Additionally, the Plaintiffs allege that the Portage BOE, in blocking Plaintiffs' proposal from the ballot, manufactured a requirement that the Plaintiffs' proposal to convert the Portage County government to a charter form must provide for a county executive position. Complaint, ¶ 222.

V. **28 U.S.C. § 1367 gives this Court supplemental jurisdiction over Plaintiffs' pendent state law claims.**

The Portage BOE invokes Eleventh Amendment sovereign immunity against the Plaintiffs' claim that the Portage BOE violated the separation of powers doctrine under Ohio law. But, this Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367 which states, in pertinent part: "…in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy…" This Court has original jurisdiction over Plaintiffs' First,

12

Ninth, and Fourteenth Amendment challenges and, while the Plaintiffs rely on Ohio law for the separation of powers claim, this claim is so related to the First, Ninth, and Fourteenth Amendment challenges that the Court also has jurisdiction over the Ohio separation of powers claim.

**Conclusion**

The Plaintiffs have alleged "enough facts to state a claim to relief that is plausible on its face" against the Portage BOE. *Traverse Bay Area Immediate Sch. Dist.v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010). Therefore, the Portage BOE's Fed. R. Civ. P. 12(B)(6) should be denied.

October 23, 2019

> */s/ Terry J. Lodge*
> Terry J. Lodge, Esq.
> 316 N. Michigan St., Suite 520
> Toledo, OH 43604-5627
> (419) 205-7084
> tjlodge50@yahoo.com
> lodgelaw@yahoo.com
> Counsel for Plaintiffs

**Certificate of Service**

      I certify that I electronically filed this document with the Clerk of the Court for the United States District Court for the Northern District of Ohio by using the Court's CM/ECF system. The other parties are Filing Users and are served electronically by the Notice of Docket Activity.

Dated: October 23, 2019

                                                      */s/ Terry J. Lodge*
                                                      Terry J. Lodge, Esq.
                                                      316 N. Michigan St., Suite 520
                                                      Toledo, OH 43604-5627
                                                      (419) 205-7084
                                                      tjlodge50@yahoo.com
                                                      lodgelaw@yahoo.com
                                                      Counsel for Plaintiffs